## WILSON v. GUGGENHEIM.
### Civil Action No. 1695.

District Court, E. D. South Carolina.
Feb. 21, 1947.

Hill, Rivkins & Middleton, of New York City, and Stoney, Crosland & Pritchard and Henry T. Gaud, all of Charleston, S. C., for plaintiff.

Waring & Brockinton, of Charleston, S. C., for defendant.

WARING, District Judge.

The above named plaintiff commenced a suit in the Court of Common Pleas for Charleston County by service of a summons and complaint on the defendant. The complaint is based upon an alleged breach of a contract for the sale of a vessel and demand is made for the sum of $34,000. By appropriate proceedings, the defendant made a special appearance and petitioned to have the case removed to this court. The petition set forth that the suit is one of a civil nature and one in which the District Courts of the United States have original jurisdiction and that the amount involved is more than the amount of $3,000, the jurisdictional amount. The petition further shows that the plaintiff is and was a citi-

zen and resident of the District of Columbia and the defendant of the State of New York. These facts in the petition are all admitted and there is no dispute or traverse as to any of the same. The Court of Common Pleas refused to order the case removed and thereupon the defendant, in accordance with the Federal Removal Statutes, Tit. 28 U.S.C.A. §§ 71, 72, filed a transcript of the proceedings in this court.

The matter now comes before me on two motions.

1. The defendant prays for an order enjoining the plaintiff and his attorneys from proceeding further in the State Court.

2. The plaintiff moves to remand to the State Court.

These two matters involve the same question and were heard as one. It is admitted that if the plaintiff were a citizen and resident of any state of the union (other than that of the defendant's residence) or were an alien, the defendant would have the right to remove the cause to this court, but it is argued that there is not the requisite diversity of citizenship between a resident of the District of Columbia and one of any state of the union; and that residents of the District of Columbia are not subject to, and may not avail themselves of, the privilege of removal from state to federal courts by reason of diversity of citizenship.

The pertinent parts of the Constitution of the United States are as follows:

"Article III, Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish * * *.

"Section 2. The judicial Power shall extend * * * to Controversies * * * between citizens of different states."

Early in our history the question arose as to whether a citizen of the District of Columbia is a citizen of a state and covered by the foregoing sections of the Constitution. In the case of Hepburn v. Ellzey, 2 Cranch 445, 6 U.S. 445, 2 L.Ed. 332, Chief Justice Marshall, speaking for the Supreme Court, held that a citizen of the District of Columbia could not maintain an action against a citizen of the State of Virginia in the United States Court for that district and that a citizen of the District of Columbia is not a citizen of a state within the meaning of the Constitution. This point is completely settled and has been followed by the courts of this country and is fully reiterated and affirmed in Hooe v. Jamieson, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049, wherein the court says, speaking through Chief Justice Fuller:

"The courts of the United States have no jurisdiction upon the ground of diverse citizenship of cases between citizens of the District of Columbia and citizens of a state."

Following the section of the Constitution above set forth, the act of Congress regulating jurisdiction of the District Courts, Title 28 U.S.C.A. § 41(1), gave jurisdiction to cases within the requisite jurisdictional amount between citizens of different states. In 1940 this was amended by adding the words "citizens of the District of Columbia."

Thus it was clear that Congress intended to correct the excepted situation and to provide that citizens of the District of Columbia should be treated as citizens of any of the states. The amendment seemed a worthy one as the situation—to adopt Chief Justice Marshall's language (Hepburn v. Ellzey supra)—was indeed "extraordinary." Indeed it does seem unusual that the citizens of the District of Columbia should be in a different category from citizens of other states or even aliens, and Congress attempted to remedy the anomalous situation and wipe out the difference. And now the plaintiff contends that this amendment is unconstitutional and extends beyond the power of Congress as bounded by the Constitution and the matter must be viewed purely in the light of what the Constitution means in outlining the jurisdiction of the federal courts. If this amendment is within the powers of Congress, then the case is properly removable to this court. If it be held that it is unconstitutional the case must be remanded.

Attention is called to the language of the great Chief Justice in Hepburn v. Ellzey supra in which—after holding that

a citizen of the District of Columbia is not a citizen of a state—he says:

"But this is a subject for legislative, not for judicial consideration."

And it is suggested that the Chief Justice meant by "legislative" that this was something that might be corrected by Congress. But with equal weight it is urged that "legislative" is used merely as a term to distinguish the remedy from "judicial." Our government is divided into executive, legislative and judicial departments and each has its own functions. Amendments of the Constitution, as well as enactment of laws thereunder, are legislative functions. Weight is added to this last suggestion as to what was meant by the Chief Justice, by his language in a later case in regard to jurisdiction of courts, Hodgson v. Bowerbank, 5 Cranch 303, 304, 9 U.S. 303, 304, 3 L.Ed. 108, he says:

"Turn to the article of the Constitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the Constitution."

In Sheldon v. Sill, 8 How. 441, 449, 49 U.S. 441, 449, 12 L.Ed. 1147, the court says:

"The Constitution has defined the limits of the judicial power of the United States, but has not prescribed how much of it shall be exercised by the Circuit Court; consequently, the statute which does prescribe the limits of their jurisdiction, cannot be in conflict with the Constitution, unless it confers powers not enumerated therein."

See also Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, which holds that Congress may give, withhold, or restrict such jurisdiction at its discretion provided it be not extended beyond the boundaries fixed by the Constitution.

But it is now argued that the amendment should be sustained under the authority of Article I, Section 8, Clause 17 of the Constitution. This gives to Congress the power

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States."

■ Undoubtedly under this provision of the Constitution the Congress has the right to provide laws for the government of the District of Columbia and to establish courts therein and prescribe their jurisdiction. This right has been upheld by many decisions of the courts of the District of Columbia and of the United States Supreme Court. See O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356. But it is quite apparent from the language of the Constitution itself that it was intended to give to the Congress the right to legislate regarding matters within the territory to be ceded. It will be noted that there is a territorial limit of 10 miles square. Nowhere does it appear except by the most strained of constructions that this was intended to give to Congress the right to legislate in regard to the courts which had been authorized and circumscribed by Article I, Section 3, hereinabove referred to, and which lay outside of this territory.

■ I do not find where the matter now under consideration has been passed upon by the Supreme Court of the United States or any of the various Circuit Courts of Appeal. There have been a number of District Court decisions which are at variance with each other. In Winkler v. Daniels, D.C., 43 F.Supp. 265, and in Glaeser v. Acacia Mutual Life Association, D.C., 55 F.Supp. 925, District Courts have held the amendment to be constitutional and retained jurisdiction of a suit between a resident of the District of Columbia and a resident of another state. The contrary view has been reached in McGarry v. City of Bethlehem, D.C., 45 F.Supp. 385; Federal Deposit Ins. Corp. v. George-Howard, D.C., 55 F.Supp. 921; Behlert v. James Foundation of New York, D.C., 60 F.Supp. 706; Ostrow v. Samuel Brilliant Co., D.C., 66 F.Supp. 593. I am of the opinion that the reasoning in these last-named opinions is unanswerable and therefore I am constrained to agree with them that the 1940 amendment to the act governing the jurisdiction of the District Courts is beyond the power of Congress.

It is with hesitation and regret that this is determined. First of all, it would seem anomalous that a citizen of the District of Columbia should be in this unique position where he may not bring a suit in the District Court of the United States in any of the states outside of the District of Columbia, or take advantage of the removal statutes if he should be sued. Also the court should make every effort to sustain the acts of Congress unless they are clearly unconstitutional. But in this case it appears to me quite clear and right beyond a reasonable doubt. The attempt to amend the statute and provide this remedy, while praiseworthy, is not within the purview of the Constitution. I am therefore of the opinion and so hold that this cause may not be removed from the Court of Common Pleas for Charleston County to this court.