### WILLIS v. DENNIS.
### Civil Action No. 215.

District Court, W. D. Virginia, at
Harrisonburg.

Aug. 18, 1947.

Irving Diener, of Alexandria, Va., and Louis E. Spiegler, of Washington, D. C., for plaintiff.

Harrison, Benham & Thoma, of Winchester, Va., for defendant.

PAUL, District Judge.

This is an action in tort in which the plaintiff is a resident of the District of Columbia and the defendant a resident of Virginia, and the complaint alleges jurisdiction on the ground of diversity of citizenship. The defendant has moved to dismiss on the ground that jurisdiction is lacking in this court, in that the action is not one between citizens of different states. The motion rests on the contention that the District of Columbia is not a state within the meaning of the Constitution and that the Act of Congress approved April 20, 1940, amending the statute, 28 U.S.C.A. § 41, subdivision 1, relating to jurisdiction of the District Courts on grounds of diversity of citizenship is unconstitutional.

The pertinent provisions of the Constitution relating to the question in issue are found in Article III, Sections 1 and 2. The first of these sections provides that the judicial power of the United States shall be vested in a Supreme Court and in such other inferior courts as Congress may from time to time establish. The United States District Courts constitute one of the inferior courts established pursuant to this power. Section 2 then provides that the judicial power shall extend, among other instances, to controversies "between Citizens of different States."

The statute defining the original jurisdiction of the district courts is found in 28 U.S.C.A. § 41, and prior to April 20, 1940, this statute provided that among the matters of which such courts should have original jurisdiction were those (subject to a named amount of the value of the matter in controversy) in which the controversy "is between citizens of different States." This was in conformity with and pursuant to the powers prescribed in the Constitution, Article III, Sect. 2. Beginning with the case of Hepburn et al. v. Ellzey, 2 Cranch 445, 2 L.Ed. 332, decided in 1804 and in which the opinion was by Chief Justice Marshall, it was held that the District of Columbia was not a "state" within the meaning of that term as used in the Constitution and that a citizen of the District of Columbia could not sue in the courts of the United States on the ground of diver-

sity of citizenship. See also Corporation of New Orleans v. Winter, 1 Wheat. 91, 4 L. Ed. 44; Barney v. City of Baltimore, 6 Wall. 280, 18 L.Ed. 825; Hooe v. Jamieson, 166 U. S. 395, 17 S.Ct. 596, 41 L.Ed. 1049.

By the Act of April 20, 1940, Congress amended the jurisdictional statute, 28 U.S. C.A. § 41, subdivision 1, in so far as it relates to diversity of citizenship, to make it read "where the matter in controversy * * * is between citizens of different States, *or citizens of the District of Columbia, the Territory of Hawaii, or Alaska, or any State or Territory."* The italicized words indicate the amendment.

Since the enactment of this amendment its constitutionality has been the subject of attack and has been passed on by a number of the district courts. It has been *upheld in* Winkler v. Daniels, D.C. E.D. of Va., 43 F.Supp. 265, and in Glaeser v. Acacia Mutual, etc., D.C. N.D. of Cal., 55 F.Supp. 925. On the contrary it has been held unconstitutional in the following cases: McGarry v. City of Bethlehem, D.C. E.D. of Pa., 45 F.Supp. 385; Behlert v. James Foundation, etc., D.C. S.D. of N.Y., 60 F.Supp. 706; Ostrow v. Samuel Brilliant Co., D.C. of Mass., 66 F.Supp. 593; Wilson v. Guggenheim, D.C. E.D. of S.C., 70 F.Supp. 417; and in Feeley v. Sidney S. Schupper Interstate Hauling System, D.C.D. Md., 72 F. Supp. 663. So far as I can find these are all of the cases in which this question has been dealt with.

I have read the opinions in all of these cases and find myself in agreement with the views expressed in the latter group of cases —not because these are larger in number but because they appear to offer inescapable reasons for their conclusion that the act is unconstitutional. In view of the careful consideration and full discussion which is exhibited in the cases cited no extended discussion is needful here. It would necessarily be but a repetition of the reasoning set out in those cases.

It might be said, however, that in both of the two cases which have upheld the act, the court acted on reasons which appear to me untenable. In Winkler v. Daniels, supra, the court relied strongly on that provision of the Constitution, Article I, Section 8, clause 17, which provides that Congress, among its other enumerated powers, shall exercise exclusive legislation in all cases "over such District" as might become the seat of the Federal Government. And apparently the argument is that this power to legislate "in all cases whatsoever" over the District of Columbia went so far as to authorize Congress to grant to citizens of the District of Columbia the privilege of suing in federal courts set up in the several states. I am unable to follow this reasoning. It seems clear to me that the Constitution in granting to Congress the power to legislate "over the district" comprising the seat of the government, intended only to provide and make clear that any area ceded to the National Government, and thereby ceasing to become a part of any state, should be subject to the exclusive control of the national legislature. At the time of the formulation of the Constitution all lands within the nation were within one or the other of the several states and subject to the laws of the states. It was contemplated that it might become desirable that the seat of the Federal Government be established in an area over which no state had jurisdiction, but independent of them all. In this event it became necessary to provide that such an area should be governed solely by the national legislature and should be free from any state laws. The provision empowering Congress "To exercise *exclusive* Legislation *in all Cases whatsoever,* over such District" served not only to exclude it from the effect of any state legislation but also made clear that in the government of such district Congress was invested with powers of legislation comparable to those exercised by the several state legislatures within their respective states. I am unable to see that this provision of the Constitution has any further intendment than that as to the District of Columbia, Congress, in addition to its powers as the national legislature, is also empowered to act as the local legislative body. Conceding that Congress under Article 1, Sect. 8, has a complete and exclusive power of legislation over all matters within the District of Columbia, including the jurisdiction of the courts established within the District, this, as pointed out by Judge Coleman in the recent case of Feeley v. Sidney S. Schupper Interstate Hauling

System, D.C.Dist. of Md., 72 F.Supp. 663, is quite a different thing from the power to enlarge the jurisdiction of all federal courts throughout the country beyond the limitations imposed by Article III.

In Glaeser v. Acacia Mutual, etc., D.C., 55 F.Supp. 925, 926, the one other case upholding the constitutionality of the Act of April 20, 1940, the court relies upon language used obiter in Hepburn v. Ellzey, wherein Chief Justice Marshall, after holding that citizens of the District of Columbia could not sue in the federal courts on the ground of diversity of citizenship, commented on the anomaly of this situation, with the remark: "but this is a subject for legislative not for judicial consideration." The court in the Glaeser case seems to have taken this language to mean that the situation could be remedied by a mere enactment of Congress. I have little idea that the great Chief Justice intended any such meaning or that he held any such view. I have no doubt that the term "legislative" was used in its broader sense and to emphasize the distinction between the power to make the law and the power to interpret it, which latter only is entrusted to the judiciary. In such a sense the formulation of all laws, whether they be embodied in the Constitution or be by enactment of Congress, are legislative functions. The opinion makes it clear that the Chief Justice found the barrier to be the Constitutional provision, not the mere inaction of Congress; and it is notable that for the 136 years following this was accepted as the basis of this decision. And even in 1940 when the questioned amendment was enacted Congress did not attempt to base its validity on the expression used in Hepburn v. Ellzey but sought to justify it under that other provision of the Constitution relating to the Congressional power to legislate for the seat of the government. And that in so doing it went far beyond any reasonable intendment of the latter provision, and thereby rendered the statute unconstitutional, is, in my opinion, quite clear.

We may all concede that it is an unusual situation that citizens of the District of Columbia are denied this privilege accorded to citizens of the several states, but the reason for it lies in the provisions of the Constitution. And even if we concede that it is unfortunate and should be remedied, it is clear that the only honest remedy is by amendment of the Constitution, and not by an evasive statute for which no underlying grant of power exists.

The motion to dismiss for lack of jurisdiction will have to be granted.