### CENTRAL STATES CO-OPS. v. WATSON BROS. TRANSP. CO.

#### No. 9291.

Circuit Court of Appeals, Seventh Circuit.
Dec. 12, 1947.

Rehearing Denied Jan. 20, 1948.

EVANS, Circuit Judge, dissenting.

Theodore R. Sherwin, and Julius L. Sherwin, both of Chicago, Ill., for appellant.

Thomas G. McBride and Brenner & McBride, all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from a judgment awarding to plaintiff the right to possession of certain property, in an action based upon the forcible entry and detainer statute of the State of Illinois. The judgment was entered upon a jury verdict directed by the court at the close of the defendant's evidence. The cause was instituted in the Municipal Court of the City of Chicago and removed on petition of the defendant to the District Court.

We are first met with the question of the jurisdiction of the District Court. This jurisdictional issue is raised in this court for the first time by the defendant, after having invoked the jurisdiction of the District Court and obtained an adverse judgment at its hands.

Plaintiff is a corporation and a citizen of the District of Columbia, while the defendant is a corporation and a citizen of the State of Nebraska. The court's jurisdiction, if such it had, is dependent upon Sec. 24 (1) of the Judicial Code, as amended by Congress in 1940, 54 Stat. 143, Act April 20, 1940, 28 U.S.C.A. § 41 (1), which so far as here material provides:

"The district courts shall have original jurisdiction as follows: First. Of all suits of a civil nature, * * * where the matter in controversy * * * (b) is between citizens of different States, *or citizens of the District of Columbia, the Territory of Hawaii, or Alaska, and any State or Territory* * * *."

The italicized portion of the provision just quoted was added by the amendment of 1940. More specifically, the court prior to the 1940 amendment had jurisdiction only of controversies between citizens of different states. By the amendment that jurisdiction was enlarged to include controversies between the citizen of a state and one of the District of Columbia.

A decision as to the jurisdictional issue is dependent solely upon the constitutionality of the 1940 amendment. This issue poses the question as to whether Congress was empowered to thus enlarge the jurisdiction of Federal courts.

We need no more than mention the firmly established rule that a jurisdictional question may be raised at any stage of the proceedings. In fact, it is the duty of a reviewing court on its own volition and irrespective of whether the question has been raised by the parties to examine into the matter of jurisdiction. Treinies v. Sunshine Mining Co., 308 U.S. 66, 70, 60 S.Ct. 44, 84 L.Ed. 85; Texas v. Florida, 306 U.S. 398, 405, 59 S.Ct. 563, 83 L.Ed. 817, 121, A.L.R. 1179. Jurisdiction cannot be waived; neither can it be acquired by assent of the parties. United States v. Corrick, 298 U.S. 435, 440, 56 S. Ct. 829, 80 L.Ed. 1263; Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338. Jurisdiction is subject to the same test where the case is before the court on removal from a State court as though it had been originally brought in the Federal court.

Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289.

This ironclad rule takes no note of the apparent hardships and unfairness which its application may produce. Illustrative is the situation before us where the defendant, after invoking the jurisdiction of the Federal court, not only failed to call the attention of the court to the matter of its jurisdiction so that it might have an opportunity to rule thereon but raised no question until it had become the defeated party in the litigation. Plaintiff concedes that the jurisdictional question may be raised at any time but attempts to escape the rule by arguing that merely a constitutional question is presented which, like most other questions, cannot be raised for the first time on appeal. We need not cite or discuss the cases relied on by plaintiff in this respect for the reason that they are, in our judgment, beside the point. After all, the question here goes directly to the court's jurisdiction, and the fact that such jurisdiction involves the validity of the statute upon which it is predicated does not, in our judgment, impair the right of a litigant or the duty of the court on its own motion to consider and decide the issue. None of the cases called to our attention makes any distinction between a case where jurisdiction is dependent upon the constitutionality of a law and one where it rests upon any other basis.

Defendant contends that the sole power of Congress relative to the 1940 amendment is lodged in Art. III of the Constitution, which provides, so far as here material:

"Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * *

"Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, * * * to Controversies * * * between Citizens of different States * * *."

It has been firmly established, as plaintiff concedes, that a citizen of the District of Columbia is not a citizen of a State within the meaning of the constitu-

tional article lastly quoted. Hepburn v. Ellzey, 2 Cranch 445, 2 L.Ed. 332; Barney v. Baltimore City, 6 Wallace 280, 18 L.Ed. 825; Hooe v. Jamieson, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049; O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356. It, therefore, appears plain that the amendment of 1940 which conferred diversity jurisdiction of a controversy between a ctizen of a State and a citizen of the District of Columbia was in excess of the power granted by Art. III, which limited such jurisdiction to controversies between citizens of different states.

Plaintiff makes no argument to the contrary, in fact tacitly concedes that such is the situation, but contends that this excess power of Congress is to be found in Art. I, Sec. 8, which provides:

"The Congress shall have Power * * * [Clause 17] To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, * * *.

"[Clause 18] To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

It is argued that the power "To exercise exclusive Legislation in all Cases whatsoever, over such District" is sufficiently broad and comprehensive to permit Congress to provide for diversity jurisdiction between a citizen of the District of Columbia and one of a State, notwithstanding the limitation imposed by Art. III. It is urged that these two provisions of the Constitution must be construed together, and when so construed the requisite power exists for the 1940 amendment. The precise question before us has not been passed upon by the Supreme Court or by a Circuit Court of Appeals. It has, however, been given much attention and study by the District Courts, as is evidenced by the fact that the question has been considered, decided, and an opinion published by nine of such courts. The

District Court of Virginia, in Winkler v. Daniels, 43 F.Supp. 265, and the District Court of California in Glaeser v. Acacia Mut. Life Ass'n, 55 F.Supp. 925, held the amendment constitutional. On the other hand, a District Court of Pennsylvania, in McGarry v. City of Bethlehem, 45 F. Supp. 385, a District Court of Missouri in Federal Deposit Ins. Corp. v. George-Howard, 55 F.Supp. 921, a District Court of New York in Behlert v. James Foundation, etc., 60 F.Supp. 706, a District Court of Massachusetts in Ostrow v. Samuel Brilliant Co., 66 F.Supp. 593, a District Court of South Carolina in Wilson v. Guggenheim, 70 F.Supp. 417, a District Court of Maryland in Feeley v. Sidney S. Schupper Interstate Hauling System, D.C., 72 F.Supp. 663, and a District Court of Virginia in Willis v. Dennis, D.C., 72 F.Supp. 853, held the amendment unconstitutional. Thus is would seem that the District Courts of the country have experienced a "field day" in constitutional erudition. The score to date is two in favor of and seven opposed to constitutionality.

As a prelude to a consideration of the precise question before us, it may be pertinent to note two rather recent observations by the Supreme Court concerning Art. III (sometimes referred to as the Judiciary Article).

In Federal Radio Commission v. General Electric Co., 281 U.S. 464, at page 469, 50 S.Ct. 389, 390, 74 L.Ed. 969, the court, concerning its own jurisdiction, stated:

"It [the Supreme Court] was brought into being by the judiciary article of the Constitution, is invested with judicial power only, and can have no jurisdiction other than of cases and controversies falling within the classes enumerated in that article."

In Lockerty v. Phillips, 319 U.S. 182, at page 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339, the court had before it a situation wherein Congress had restricted the jurisdiction of Federal courts in certain matters. The court stated:

"All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, con-

ferred on Congress by Article III, § 1, of the Constitution. Article III left Congress free to establish inferior federal courts or not as it thought appropriate. It could have declined to create any such courts, leaving suitors to the remedies afforded by state courts, with such appellate review by this Court as Congress might prescribe."

Plaintiff's argument that the congressional power over courts as contained in Art. III is implemented by the powers conferred upon it relative to the District of Columbia by Art. I so as to justify the amendment of 1940, is predicated almost entirely upon the reasoning of the District Court in Winkler v. Daniels, supra, and the authorities therein cited. For this reason, we shall briefly analyze the reasoning of that case as well as the authorities upon which it rests.

Much reliance is placed upon the congressional history of the amendment, and particularly the report of the sponsoring committee. 43 F.Supp. 265, at page 266. The committee report, after quoting and discussing Sec. 8, Art I of the Constitution, makes the following significant statement concerning Art. III:

"The purpose of article III was to create an independent judiciary with powers conferred directly by the Constitution. These powers cannot be taken away from Congress. The Constitution guarantees to certain persons the right to demand the exercise of these powers under certain circumstances. For example, a citizen of a State may do so when involved in a case or controversy with a citizen of another State. The mere fact that the Constitution guarantees this right to the citizens of a State in no way prohibits the Congress from extending that same privilege to others who are not technically citizens of a State. This does not mean that Congress may indiscriminately add to the jurisdiction or authority of the courts. Its powers to so add must in any case be found in the Constitution."

■ This reasoning of the committee that a citizen of a State has the constitutional right to invoke Federal jurisdiction of a controversy with a citizen of another State is, so we think, fallacious. Even Con-

gress is not under any constitutional mandate to establish a Federal forum for litigants, either by reason of diversity of citizenship or otherwise. See quotation from Lockerty v. Phillips, supra. The citizen of a State is entitled to a Federal forum only under such circumstances and conditions as Congress in its discretion may provide. Moreover, even if the citizen of a State was entitled to such a forum as a matter of constitutional right, we fail to discern how that could be utilized as a basis for congressional power to confer the same right upon a citizen of the District of Columbia.

Neither do the authorities cited in the Winkler case and relied upon by the plaintiff here furnish any support for the constitutionality of the amendment. True, Stoutenburgh v. Hennick, 129 U.S. 141, 9 S.Ct. 256, 32 L.Ed. 637; District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329, and Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246, demonstrate the broad congressional power over the affairs of the District of Columbia and its citizens conferred by Sec. 8, Art. I of the Constitution. There is, however, no support in these cases for the contention that Congress because of such power became the repository of power over the Federal courts of the entire country further than that prescribed by Art. III.

Neither does the case of O'Donoghue v. United States, supra, so strongly relied upon, aid the plaintiff's contention but points strongly in the opposite direction. The court there was considering the power of Congress with reference to the courts of the District of Columbia and held that its power in that respect was greater than its powers over the courts of the country generally. The court stated 289 U.S. at page 546, 53 S.Ct. at page 748, 77 L.Ed. 1356:

"If, in creating and defining the jurisdiction of the courts of the District, Congress were limited to article 3, *as it is in dealing with the other federal courts,* the administrative and other jurisdiction spoken of could not be conferred upon the former. But the clause giving plenary power of legislation over the District enables Con-

gress to confer such jurisdiction *in addition to the federal jurisdiction which the District courts exercise under article 3,* notwithstanding that they are recipients of the judicial power of the United States under, and are constituted in virtue of, that article." (Emphasis ours.)

Thus, the court apparently recognized that the power of Congress as to Federal courts other than those of the District of Columbia is limited by Art. III, but as to the latter, it has been granted a power additional to that conferred by Art. III. This recognition further appears from the following statement of the court (same page):

"Since Congress, then, has the same power under article 3 of the Constitution to ordain and establish inferior federal courts in the District of Columbia as in the states, whether it has done so in any particular instance depends upon the same inquiry, Does the judicial power conferred extend to the cases enumerated in that article? If it does, the judicial power thus conferred is not and cannot be affected by the additional congressional legislation, enacted under Article 1, § 8, cl. 17, imposing upon such courts other duties, *which, because that special power is limited to the District, Congress cannot impose upon inferior federal courts elsewhere.* The two powers are not incompatible; and we perceive no reason for holding that the plenary power given by the District clause of the Constitution may be used to destroy the operative effect of the judicial clause within the District, where, unlike the territories occupying a different status, that clause is entirely appropriate and applicable." (Emphasis ours.)

The court further evidenced the distinction to be drawn between the power of Congress over courts of the District of Columbia and other Federal courts of the country. In discussing the former, the court stated 289 U.S. at page 547, 53 S.Ct. at page 749, 77 L.Ed. 1356:

" * * * that it drew its power from the same source, even though it was necessary it should have recourse to another provision of the Constitution in order to clothe the courts at the seat of government with other and additional authority not permissible under article 3."

It is also pertinent to keep in mind that the 1940 amendment does not confer only a benefit or right upon the citizens of the District of Columbia. It also imposes a burden in that they may become defendants as well as plaintiffs in diversity cases. Of greater importance is the fact that the reach of its terms is not confined to the citizens of the District of Columbia but includes with equal effect the citizens of all the States. It is hardly conceivable that Congress, broad as its powers may be with reference to the District of Columbia, can under the claim of exercising such powers legislate for the entire nation. Especially is this so concerning the judiciary, where its power is expressly limited by Art. III.

The argument that the citizens of the District of Columbia are entitled to the same rights and privileges as those of the States, including that provided by the amendment with which we are now concerned, is appealing, but it is of little if any consequence relative to the question with which we are now confronted. In response to a similar argument, the court in Feeley v. Sidney S. Schupper Inter-State Hauling System, supra, stated D.C. 72 F.Supp. at page 667·

"The District of Columbia, by reason of its being the seat of the national government and under the exclusive jurisdiction of Congress by Article I, Section 8, Clause 17, is totally unlike any other governmental area in our union. It is not like a State. It is not like a territory. It is an area that is in a class by itself. Its anomalous position has been repeatedly recognized by the Courts. [Citing cases.] The prima facie discrimination against residents of the District, therefore, loses substance when it is considered in the light of a wholly exceptional situation, created by the framers of the Constitution out of necessity for a national capitol, from whose very nature flow many unusual consequences."

We conclude that the power of Congress over the inferior Federal courts of the country other than those of the District of Columbia (and perhaps certain

territories) is limited to that conferred by Art. III of the Constitution. It follows that Congress in the enactment of the 1940 amendment exceeded its power and that the amendment is unconstitutional.

The judgment is therefore reversed and remanded, with directions that the District Court remand the cause to the State court from which it was removed.

EVANS, Circuit Judge (dissenting).

Convinced that a court must give heed to the results which its construction of a contract, a statute, or a Constitutional provision provokes,[1] I have been made to pause before joining in the majority opinion, which I must admit has convincing and somewhat persuasive qualities, to say nothing of the highly favorable·reaction which arises from the fact that it is the mature judgment of my respected brethren. That result, however, leaves such a sour taste, it is so contrary to the practice of the forefathers to deal differently with one group of citizens than with another, that I not only pause but must reject forthwith any construction which would attribute to the founders an intent to treat a large part of our population—now nearly a million—so as to deny them what is given to all other citizens in other states.

I can not attribute any such intent to them.

· The construction of the majority must be accepted, if at all, solely on the ground of oversight by the framers of Article III. As to that view, the outstanding thought is that no construction of the Constitution should be adopted which attributes to silence or failure to specifically mention a group, controlling weight, over a clear intention to treat all alike. ·

The entire scheme of the Federal Government as the finished Constitution bespeaks, is equality of the citizen. The two dominating thoughts that run throughout its length and breadth, and through all the debates leading to its final adoption, are (a) the supremacy of the citizen, and (b) the equality of the citizens.

The majority opinion denies to the citizen of the District of Columbia a right which the citizen of every state in the Union enjoys. He may not sue in a Federal Court on the basis of diversity of citizenship to protect his rights, if he be·a citizen of the District of Columbia. Of all the territories in which to deny a citizen that right, the District of Columbia seems to me to be the most illogical and unjustifiable.

Is such a conclusion necessary from the language used in Section 2, Article III? Perhaps I should state the question—Is such a conclusion unavoidable from said language? I believe the Supreme Court must so construe it before we inferior Federal Courts should so hold.

Let us first turn to the judicial precedent. Our first case controls, if it be in point. It was decided by the Supreme Court. Justice Marshall spoke for the Court. That alone is sufficient to paralyze any doubting Thomas unless he can distinguish it. If it may not be distinguished, my argument vanishes.

In that case of Hepburn v. Ellzey, 2 Cranch 445, 2 L.Ed. 332, we are met by a holding which it seems to me is distinguishable.

There the Supreme Court was passing upon an Act of Congress which gave "jurisdiction to the circuit courts in cases between a citizen of the *state* in which the

---

[1] Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 62 S.Ct. 1129, 1135, 86 L.Ed. 1629.

"The Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' * * * Particularly in a case like this are we in the realm of actualities and not of abstractions and paper rights. * * * The dividing line will remain obscure if we deal with empty abstract rights instead of worldly gains and losses, if we indulge in doctrinaire talk about 'rights' and 'remedies', instead of giving these concepts a content that carries meaning to the understanding of men. * * * To call a law so beneficent in its consequences on behalf of the creditor who, having had so much restored to him, now insists on standing on the paper rights that were merely paper before this resuscitating scheme, an impairment of the obligation of contract is indeed to make of the Constitution a code of lifeless forms instead of an enduring framework of government for a dynamic society."

suit is brought, and a citizen of another state."

Chief Justice Marshall said:

"The question * * * is, whether the plaintiffs, as residents of the district of Columbia, can maintain an action in the circuit court of the United States for the district of Virginia. This depends on the *act of congress* describing the jurisdiction of that court. That act gives jurisdiction to the circuit courts in cases between a citizen of the state in which the suit is brought, and a citizen of another state. To support the jurisdiction in this case, therefore, it must appear that Columbia is a state.

* * * as the act of congress obviously uses the word 'state' in reference to that term as used in the constitution, it becomes necessary to inquire whether Columbia is a state in the sense of that instrument. The result of that examination is a conviction that the members of the American confederacy only are the states contemplated in the constitution.

"The house of representatives is to be composed of members chosen by the people of the several states; and each state shall have at least one representative. The senate of the United States shall be composed of two senators from each state. Each state shall appoint, for the election of the executive, a number of electors equal to its whole number of senators and representatives. These clauses show that the word state is used in the constitution as designating a member of the Union, * * *. When the same term which has been used plainly in this limited sense, in the articles respecting the legislative and executive departments, is also employed in that which respects the judicial department, it must be understood as retaining the sense originally given to it.

*　　*　　*　　*　　*　　*

"*It is true, that as citizens of the United States, and of that particular district which is subject to the jurisdiction of congress, it is extraordinary, that the courts of the United States, which are open to aliens, and to the citizens of every state in the union, should be closed upon them. But this is a subject for legislative, not for judicial consideration.*" (Our italics.)

Since Marshall wrote this opinion, Congress has spoken. The legislative branch to which he referred has dealt with the subject. We have the *"legislative* consideration" in the form of a new Act here under consideration. In the Ellzey case, the Congressional Act held not to grant the District of Columbia citizens recourse to the Federal court, was couched in the same limited phraseology as the Constitution, i. e., "citizens of different *states.*" Now Congress has become specific and included citizens of territories *and the District of Columbia.* No longer need we lament the unfairness of an Act which makes our courts open to "aliens" and "closed" to citizens of the District of Columbia.

Unfortunately, after a study of this case we find we have only transferred our inquiry, and our doubts, from the question before us to an inquiry as to what Justice Marshall meant when he wrote the last sentence of that opinion, "But this is a subject for *legislative,* not for judicial consideration." What did he mean when he used the word "legislative"? Did he intend that "legislative" required an amendment to the Constitution, or just an Act of Congress? Have we not here quite as great uncertainty as if he had not spoken?

Various courts seem to have refused to accept the Ellzey case as conclusively controlling, and language is used which favors the upholding of the statute. The Federal courts which have passed directly on this question have divided[2]—those denying the

---

[2] Holding Act unconstitutional:

Feeley v. Sidney S. Schupper Interstate Hauling System, D.C.Md., 72 F. Supp. 663; Wilson v. Guggenheim, D. C.S.C., 70 F.Supp. 417; McGarry v. City of Bethlehem, D.C.Pa., 45 F.Supp. 385; Federal Deposit Ins. Corp. v. George-Howard, D.C.Mo., 55 F.Supp. 921. Rev. 8 Cir., 153 F.2d 591, certiorari denied 329 U.S. 719, 67 S.Ct. 53; Behlert v. James Foundation, D.C.N. Y., 60 F.Supp. 706; Willis v. Dennis, D. C.Va., 72 F.Supp. 853.

Holding Act constitutional:

Winkler v. Daniels, D.C.Va., 43 F. Supp. 265; Glaeser v. Acacia Mutual Life Ass'n, D.C.Cal., 55 F.Supp. 925.

constitutionality are in the majority, I am told (7-2). No Circuit Court of Appeals has heretofore been presented with the question.

The subject has interested another group of students to whose opinion I am prone to give weight. I refer to the law writers in the Law School Journals of the Universities. They have spoken quite strongly in favor of the constitutionality of the Act and quite righteously against a result so contrary to their sense of fairness, as would follow a holding of unconstitutionality.[3]

I give a few reasons for my conclusion.

(1) A determination of unconstitutionality should be avoided if at all possible.

---

[3] 55 Yale Law Journal 600. The constitutionality of the 1940 Extension of Diversity Jurisdiction:

"In 1933, in O'Donoghue v. United States, there appeared the first crack in the doctrine that the constitutional courts could receive jurisdiction only of the cases and controversies enumerated in Article III, Section 2. * * * Therefore, the corollary of the limitation doctrine—namely that a court having jurisdiction of cases not enumerated in Article III, Section 2 cannot be a constitutional court—was contravened by the holding of the O'Donoghue case."

5 Louisiana Law Review 478:

"The Virginia court's decision here has the effect of saying that a grant of jurisdiction to the federal courts need not be expressly found in the judiciary article, but may be impliedly found in any other article of the Constitution. * * *

"Nevertheless, whether the reader agrees with the liberal decision handed down by the Virginia court, he must agree that this result is the only just and equitable one. Why should not a citizen of the District of Columbia be allowed the same privileges as a citizen of any state in suing and being sued in a federal court except for the reason that the framers of the Constitution did not provide for it?

"One can only speculate as to what the Supreme Court will hold when it has occasion to pass on this amendment. In view of past jurisprudence, it would seem that the amendment's constitutionality is doomed; however, with the liberal court which we have today, there is a good chance that the statute will be upheld. Undoubtedly the result reached by a decision upholding it would be just; but the question that presents itself in the writer's mind is whether the result will justify the means. Such reasoning could have the effect of extending the jurisdiction of the federal court far beyond its present bounds."

29 Georgia Law Review 193. Diversity of Citizenship Clause Extended. James A. McKenna, Jr.:

"If a numerical recapitulation were made of the instances in which the word "state" has been considered as including the District of Columbia and the territories and in the instances in which it has not, undoubtedly the former would be the larger of the totals. It is not suggested that a numerical superiority should be the controlling factor in a determination of this matter. However, it is indicative that the Supreme Court has not been concerned with consistency in interpreting this phase of the Constitution. Such a conclusion is submitted merely as an indication that the result of Hepburn v. Ellzey could very well be the subject of a judicial revision.

"The mere fact that the Constitution expressly guarantees this right to citizens of the states only in no way prohibits Congress from extending the same privilege to others who are not technically citizens of a state. Citizens of the District of Columbia and the territories are citizens of the United States, possessing the same burdens and obligations as all the other citizens.

"Despite doubts on the question of constitutionality, it is appropriate that Congress has seen fit to attempt to bring about this change. It has been long awaited, especially since the opinion in Hepburn v. Ellzey, the first case, seems to suggest that the condition was a peculiar one and that the legislature might do well to change it.

"Perhaps some of the delay has been caused by the belief that there were insurmountable constitutional obstacles in the way of reform, but it is odd that so fixed a notion has grown up in view of the express intimation of Chief Justice Marshall that the problem was one of Congressional intent rather than constitutional power."

11 George Washington Law Review 258:

"The incongruity of resorting to the fiction of holding the City of Bethlehem to be a 'citizen' of the Commonwealth of Pennsylvania for the purpose of satisfying a jurisdictional requirement of diverse citizenship and refusing at the same time, to apply the fiction to the District of Columbia as a 'state' for the same purpose is quite evident, and a careful analysis of the cases supporting these opposite propositions fails to dispel the aura of arbitrariness which pervades them. * * *

"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question [of constitutionality] may be avoided." Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598; Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083; Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473; Panama R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748; United

"The Amendment of April, 1940, to the Judicial Code was there construed and upheld on the ground that the constitutional provision 'extending' jurisdiction to the federal courts in cases involving diversity of citizenship was not framed in words of 'exclusion' and that the power of Congress to legislate for the District of Columbia could properly be employed to extend diversity jurisdiction to cases involving its citizens. * * *

"The manifest purpose of the constitutional provision conferring jurisdiction on the federal courts in cases involving citizens of different states was to secure the citizen against local prejudice which might injure him if he were compelled to litigate controversies in the tribunals of his adversary's state, * * *.

"It is evident that a more courageous and realistic approach to the question of the rights of citizens of the District of Columbia and the territories of Alaska and Hawaii to visit the fountains of federal justice by the same route which is open to citizens of the several states is requisite to give life and vigor to the principle of equality of privilege and freedom from discrimination which is the inalienable right of all citizens of the United States."
21 Texas Law Review 83. Federal Procedure — Diversity Jurisdiction — 1940 Amendment.

"Granting this, however, an argument has been made that the District of Columbia and the territories should be included in the word 'states', regardless of the past holdings that such citizens are not citizens of states. Certainly, in other connections, the Supreme Court has not attempted to be consistent in its construction of the word 'states,' and the numerical weight of cases favors the liberal construction.

"These recent developments, along with the older ones, evidence the breaking down of the strict barriers which originally divided the two kinds of courts, and furnish a basis upon which the Court may uphold the Amendment if it is willing so to extend diversity jurisdiction. As a matter of policy, there can be no real reason why citizens of the District of Columbia should not be on an equal footing with the rest of the nation."
21 Tulane Law Review 171. The 1940 Amendment to the Diversity of Citizenship Clause.

"It is clear that by the statute Congress intended to rectify that manifestly unjust situation. * * *

"The Supreme Court could meet the problem of constitutionality by holding that within the meaning of Article III, citizens of the territories and the District of Columbia are in fact 'citizens of states.'

"A more realistic approach would simply deny that Article III is the sole source of federal judicial power. It could be argued that the extension of diversity jurisdiction is a valid and reasonable exercise of the broad powers which the Constitution grants to Congress to legislate for the territories and the District of Columbia. This was the concept adopted by the Committee on the Judiciary of the House of Representatives in its report and was accepted by the courts in the Winkler and Glaeser cases. * * *

"As a matter of fact, it is clear that Marshall felt that there was no constitutional inhibition to the extension of diversity attempted by the 1940 amendment. For after decrying the necessity of the result of the Hepburn case under the provisions of the Judicial Code, he added, 'But this is a subject for legislative, not for judicial consideration.' It would be specious, to say the least, to argue that by 'legislative Consideration' Marshall envisaged an amendment to the Constitution. The statement can have but one meaning; Marshall felt that the Constitution allowed the revision of the diversity clause, either under a broad interpretation of Article III or by Authority of some other constitutional provision. It is significant that no reference is made to these words by Marshall in either the McGarry or the Behlert decisions.

"Whether it be justified under Article III or as legislation for the territories and the District of Columbia, the amendment obviously is dictated by the most basic considerations of justice. No argument has been made against the fairness of the extended provisions. It is to be hoped and expected, when the question is presented to the Supreme Court, that it will be resolved in favor of constitution-

States v. Walter, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137; Alabama State Federation of Labor etc. v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725.

I wonder if this is just a paper rule. If not, what factual situation determines its application? Is it invocable only in state courts to prevent justices of peace from holding acts unconstitutional? If applicable to Federal courts, is it effective only in the Supreme Court? Rather seriously, I ask why should the inferior Federal courts apply the rule when in the Supreme Court the question of constitutionalty can seldom be determined by rules. It strikes me that the rule should either be applied or abandoned in inferior Federal courts.

(2) Rules of construction applicable alike to private contract, statute or constitution, require that if there be inconsistency between two parallel provisions, one general and one specific, the specific shall control. Generalia specialibus non derogant.[4] "Words * * * of a constitution, are not to be read with such stultifying narrowness." United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 1039, 85 L.Ed. 1368.

(3) The specific constitutional provision here involved gives Congress all inclusive power of legislation over the District of Columbia. Art. 1, Sec. 8, Clause 17. Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 1039, 87 L.Ed. 1339.

(4) A broad construction of the judiciary provisions of the Constitution weakens if it does not destroy any asserted inconsistency between the two provisions.[5]

(5) There is no logical or rational basis

---

ality. To do otherwise and adopt the literal and ritualistic attitude towards the Constitution which the District Courts followed in the McGarry and Behlert cases would be strongly inconsistent with the manner in which the Supreme Court throughout its history has reshaped and molded constitutional provisions to meet the changing requirements of the times.

"The 1940 amendment is a step towards remedying some of the obvious inequalities which exist in the present federal judicial system."

XLVI Columbia Law Review 125:

"Since the question whether or not the District of Columbia is to be treated as a 'state' within the terms of the Constitution has not been uniformly decided, it would seem that such determination must be made in the light of the purpose and scope of the particular provision in question. Diversity of citizenship jurisdiction was granted to the federal courts to alleviate fears that suits brought by citizens of one state in the courts of another state would be adjudicated unfairly. It is clear that this purpose is equally applicable when the suit is brought by citizens of the District of Columbia. Thus, since it was early held that a citizen of the District is not a 'citizen of a state' under the Congressional act granting diversity jurisdiction to the federal courts, the 1940 amendment to the Judicial Code was enacted. Because of its beneficial nature, this statute should not be declared invalid unless it clearly transcends Congress' constitutional authority to legislate for the District.

"It may be argued that since the diversity provision has no negative implications, this statutory grant of diversity jurisdiction to the federal courts may be upheld under Article I, Section 8. However, the tenuous nature of this position becomes evident in the light of what appears to be the established rule of constitutional law that the scope and extent of the jurisdiction of the constitutional courts must emanate from Article III.

"It may also be maintained that Congress, in enacting the statute in the instant case, has, in effect, for purposes of diversity jurisdiction in the federal courts, vested the citizens of the District of Columbia with the character of a citizen of a state. Thus, if Congress can so characterize a citizen of the District, the diversity provision becomes applicable, whereupon the constitutionality of the statute can be sustained."

Also see 29 Georgetown Law Journal 193.

4 Stated in another way, "It is also settled beyond dispute that the Constitution is not self-destructive. In other words, that the powers which it confers on the one hand it does not immediately take away on the other * * *". Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 424, 58 L.Ed. 596. "Fundamental [constitutional] principles are of equal dignity and [none] must be so enforced as to nullify or substantially impair the other." Dick v. United States, 208 U.S. 340, 28 S.Ct. 399, 52 L.Ed. 520.

5 There is very plausible ground for saying that the enumeration of subject matter of jurisdiction of the Federal Judiciary is not *limited* to the items there enumerated—rather such enumeration

for discriminating against the citizens of the District of Columbia barring them from recourse to the Federal Court based on diversity of citizenship grounds.

(6) While "fundamental" lack of jurisdiction is always assertable, I suffer from pangs of doubt over appellant's right to assert a lack of jurisdiction for the first time on this appeal, for it chose the forum and based jurisdiction on the diversity of citizenship. It transferred the case from State to Federal Court basing jurisdiction on diversity of citizenship, and only after defeat in the Federal Court and after appeal to this court did it assert a lack of jurisdiction of Federal Court because plaintiff was a resident of the District of Columbia. These pangs of doubt have grown somewhat as I studied cases that seemed to place more weight on the reasons back of estoppel than on precedents. The doctrine of estoppel is no respecter of causes, but just an old-fashioned common sense defense founded on appealing equitable reasons.

I believe that defendant is estopped to assert the unconstitutionality of the statute. I base this conclusion on the decision of the court in the case of Great Falls Mfg. Co. v. Attorney General, 124 U.S. 581, 598, 8 S.Ct. 631, 637, 31 L.Ed. 527. That opinion in part reads:

"*It* is, however, *contended that the act is,* in all of its parts, *unconstitutional and void.* The grounds upon which the plaintiff rests this contention are that the act makes no provision by which compensation for property taken under it can be constitutionally adjusted and determined; that it does not provide for the ascertainment of such compensation by the verdict of a jury; *that it compels the plaintiff to have recourse to the court of claims, which is a court unknown to the constitution,* being neither a court of equity such as was known at the adoption of that instrument, nor a court of law proceeding according to the rules of the common law, but only a board of referees, constituted by one party to hear such cases as another party will consent to submit to its determination, and without power to enforce its judgment against the party by whom it is created; and that it directs property to be taken, and the owner thereof dispossessed, without making provision for just compensation.

"*These are questions of much interest * * *.* But this opinion need not be extended for the purpose of such an examination; for the questions propounded are not material in the determination of the present case. *They have become immaterial by the act of the plaintiff in instituting suit against the United States in the court of claims. * * ** By the same act it has estopped itself from suggesting that no judgment ob-

---

lists the matters which the Constitution's framers required Federal Courts to take jurisdiction of. In Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 661, 51 L.Ed. 956, it was said:

"It is a definite declaration,—a provision that the judicial power shall extend to—that is, shall include—the several matters particularly mentioned, leaving unrestricted the general grant of the entire judicial power. There may be, of course, limitations on that grant of power, *but, if there are any, they must be expressed;* for otherwise the general grant would vest in the courts all the judicial power which the new nation was capable of exercising. * * *

"Speaking generally, it may be observed that the judicial power of a nation extends to all controversies justiciable in their nature, and the parties to which or the property involved in which may be reached by judicial process, and, when the judicial power of the United States was vested in the Supreme and other courts, all the judicial power which the nation was capable of exercising was vested in those tribunals; and unless there be some limitations expressed in the Constitution it must be held to embrace all controversies of a justiciable nature arising within the territorial limits of the nation, *no matter who may be the parties thereto.*"

See also Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339: "All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III, § 1, of the Constitution. * * * The Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.'"

tained in the court of claims can be enforced against the United States."

Also I find comfort in Skinner v. Franklin County, C.C.Ill., 179 F. 862, 863, where it was held

"It is contended by the defendant, however, that case can have no application in this case, for the reason, as argued by counsel, that the court had no jurisdiction of Pinckney, nor of the bonds then owned by him, and now involved in this suit; that the statute of Illinois by which unknown bondholders were made parties, and service thereon had by notice by publication is invalid as in contravention of the Constitution, in that it deprived Pinckney of his property without due process of law. Without attempting to reproduce the argument by which this proposition is sought to be maintained, or that by which it is claimed to be refuted, I merely pass it with the observation that defendant invoked the jurisdiction prima facie conferred by the statute, and, having obtained a different result than expected, is in no position to question its own voluntary action or proceeding instituted by it, where, had Pinckney appeared in fact, and by proper amendment been made party by name, there would now be no ground upon which to rest the argument now insisted upon by the defendant."

Coming to the merits, it strikes me that we are on debatable ground over the word "state". The word "state" may well have included something other than the government of a people in a territory. It may have meant the territory, which includes the people therein. It may have included one or a plurality of commonwealths and it may have been intended to include more than one meaning,—more than the territory and the government by which people therein are governed. I think it was most frequently used, and was in this section, to mean the *people* who make and enforce the laws of any given territory. It would seem more natural to apply it to the people whose rights, and whose form of government, were the dominant subject of consideration by those who were writing the Federal Constitution.

In the Constitution the word "state" is used more than forty times. I do not think it is logical to limit the meaning in this section if thereby an intention to discriminate between citizens, which idea is so foreign to the rest of the Constitution, results.

The founders were establishing the framework of a Government which would prove its greatness in the future. Doubtless they knew well and were satisfied with their present strength, but it was the future which beckoned. Many of them had glimpsed visions of the republic that was to be along the banks of the Ohio and the Mississippi.

Would they be giving a narrow meaning to the word "state"? Would they distinguish between citizens of one locality and another?

The designation of the area as a territory came later. They were laying the foundation that would meet an expanding population. They were providing for an ambitious, ceaselessly growing nation. It was not within their ken or visions to plan for a country or government that was to remain static.

When providing for the important judiciary branch they enjoyed a broad horizon. They were providing tribunals wherein the citizen could protect and vindicate his rights and the foremost one was the right to be treated on terms of equality, when it came to the citizen's property, his life, his liberty or the pursuit of happiness.

Such a conception completely nullifies any construction of the word "state" in this section which would limit it to a territorial subdivision already in existence. The judiciary, like the executive and legislative, was to grow in importance with the years. The framers, however, meant to lay the foundation upon which it should grow. That foundation was, I repeat, equality of citizens. The courts were the place where that equality could be vindicated. Impossible is the thought that they started out by closing the doors to any group or make admittance to said courts' protection dependent upon where said citizen dwelt. This impossible construction can be avoided if we ascribe to the word "state" a meaning of citizens in a geograph-

ical subdivision, such as a territory or the District of Columbia.

The contention that the word "state" as used in the Constitution excludes the District of Columbia, would have greater weight if that word were not used so many times in the Constitution. Whether the same word in two statutes means the same thing depends on whether the statutes are in pari materia. United States v. Montgomery Ward & Co., 7 Cir., 150 F.2d 369. For like reasons, the framers of the Constitution may well have had a somewhat different meaning in mind when using this word "state." For example, the citizen of the District of Columbia was subject to taxation because he came within the group defined by the act. Heald v. District of Columbia, 259 U.S. 114, 42 S.Ct. 434, 66 L.Ed. 852.

Unquestionably the fact that the courts have decided that a citizen of the District of Columbia can not vote because not included in the group, must be viewed as favoring the narrower construction of this word. It, however, should have no more weight than the decision which subjected the citizens of the District of Columbia to its tax enactment. Moreover, I find it difficult to reconcile the majority decision in the Myers case (Myers v. United States) (272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160) with the decision in Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed. 956.

It is rather hard to believe that the framers of the Constitution did not intend to confer upon the Federal District Court, jurisdiction of all common law actions, and certainly they would not, if restricting jurisdiction to diversity of residence of litigants, have made it depend on residence in particular localities.

Considering the general scheme and purpose of the Constitution, a broad and uniform jurisidiction of the Federal Courts would be the logical objective of the framers.

I am not arguing for a wide open scope of jurisdiction in this case. It is not necessary. I do believe it might well have been argued before the question became settled by judicial decision, not now subject to review. Few of us would care to repeat the upsetting effect of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, even though a sturdy conviction concerning the general scheme and framework of the Constitution suggests that logically the said framers intended to give the Federal Courts jurisdiction of all common law actions. Far from holding such a broad jurisdiction, all that is needed here is to hold that by this section of the Constitution, the founders gave to Federal Courts, jurisdiction where litigants were from different territorial subdivisions called states.

I will not discuss the added reason for my conclusion, namely the specific grant of power to Congress, found in Art. I, Sec. 8.

In conclusion, I would hold the Act in question to be constitutional even if the doubts which I entertained were more substantial than they are. I would not declare an Act unconstitutional in so important a statute, where there was serious doubt, but would leave to the Supreme Court, that decision.

Also, I would say that in this case the appellant should be estopped from asserting the objection.