**FEELY v. SIDNEY S. SCHUPPER INTERSTATE HAULING SYSTEM, Inc.**

**BREEDING v. SAME.**

Civil Actions Nos. 3157, 3158.

District Court, D. Maryland.

June 9, 1947.

664

Benjaman Swogell, of Baltimore, Md., for plaintiffs.

James J. Lindsay, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

These two proceedings are personal injury suits. Although having different plaintiffs, each plaintiff is a citizen and resident of the City of Washington. The defendant, the same in both cases, is a Maryland corporation; and, on its behalf, in each case a motion has been filed to dismiss the action on the ground that this Court is without jurisdiction to hear the suits, since the prerequisite of jurisdiction is diversity of citizenship which, it is asserted, requires that the opposing parties be citizens of different States, and is not met by citizenship of the District of Columbia. The two proceedings were consolidated for the purposes of these motions which have been heard as one.

The sole question thus presented by the motions for decision is as to the constitutionality of the following part of Section 24 of the Judicial Code, 28 U.S.C.A. § 41

(1), providing for original jurisdiction of the District Courts, as amended by the Act of April 20, 1940, c. 117, 54 Stat. 143: "First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and * * * (b) is between citizens of different States, *or citizens of the District of Columbia, the Territory of Hawaii, or Alaska, and any State or Territory,* * * *." The words which we have emphasized constitute the change made in this part of the statute by the 1940 amendment. Thus, if Congress had power to extend the jurisdiction of the District Courts as it has done by this added language, the motions before us are without merit. Otherwise, the motions must be granted.

Until Congress enacted the amendment to 28 U.S.C.A. § 41(1) in 1940, 54 Stat. 143, the courts had consistently held that a citizen of the District of Columbia was not a citizen of a State within the meaning of the Constitution, Article III, Sec. 2. Hooe v. Jamieson, 1897, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049; Barney v. Baltimore City, 1867, 6 Wall. 280, 18 L.Ed. 825; Hepburn v. Ellzey, 1805, 2 Cranch 445, 2 L.Ed. 332; see also O'Donoghue v. United States, 1933, 289 U.S. 516, 543, 53 S.Ct. 740, 77 L.Ed. 1356. And neither the Constitution, the Judiciary Act of 1789, nor the Judicial Code prior to the 1940 amendment, provided for federal jurisdiction on the ground of diversity of citizenship, of suits involving citizens of the District of Columbia. By the 1940 amendment to 28 U.S. C.A. § 41(1), however, Congress attempted to make provision for such jurisdiction. Whether or not this attempt can be considered effective to give the District Courts jurisdiction of a suit by or against a citizen of the District of Columbia depends upon a consideration of the constitutionality of what Congress attempted to do.

Thus far, there are reported opinions from five District Courts on the constitutionality of this amendment, two courts upholding the statute and three striking it down as unconstitutional. The cases in which these opinions have been rendered are as follows: Winkler v. Daniels, D.C.

E.D.Va. 1942, 43 F.Supp. 265 (upholding the amendment); McGarry v. City of Bethlehem, D.C.E.D.Pa. 1942, 45 F.Supp. 385 (holding the amendment unconstitutional); Glaeser v. Acacia Mutual Life Ass'n, D.C.N.D.Cal. 1944, 55 F.Supp. 925 (upholding the amendment); Behlert v. James Foundation of New York, D.C.S.D.N.Y. 1945, 60 F.Supp. 706 (holding the amendment unconstitutional); and Ostrow v. Samuel Brilliant Co., D.C.Mass. 1946, 66 F. Supp. 593 (holding the amendment unconstitutional). None of these cases has gone beyond the District Courts. Apparently, in cases where jurisdiction was denied, the plaintiff found it more economical to bring suit in the appropriate State tribunal rather than to appeal; and, in those cases where jurisdiction had been found to exist, the ultimate outcome of the trial upon the merits made an appeal unnecessary or not advisable.

Constitutional provisions relied upon by the various District Courts, both in upholding and in invalidating the 1940 amendment, are as follows:

Article I, Section 8. "The Congress shall have Power * * *

[Clause 17] To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, * * * —And

[Clause 18] To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

Article III, Section 1. "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * * "

Section 2. "The judicial Power shall extend * * * to Controversies * * * between citizens of different States, * * *."

The Winkler case, supra, upholding the amendment, and the Behlert case, supra, which held the amendment unconstitutional,

present more fully than do any of the other decisions, the leading arguments on either side of the controversy, with District Judge Conger in the Behlert case having had the benefit of the cases previously decided.

In the Winkler case District Judge Way, in upholding the amendment, relies for his reasoning upon the argument presented by the proponents of the amendment (H.R. Report No. 1756, March 12, 1940, Committee on the Judiciary, 76th Cong., 3rd Sess.) in Congress. Judge Way, adopting the Congressional report, says (1) that Article III of the Constitution must be construed in connection with Article I, Section 8, relating to the exclusive power of Congress to legislate in all cases over the District of Columbia. He says (2) that by Article III, the Constitution guarantees the right to a citizen of a State to demand the exercise of the powers of the federal judiciary when he is involved in a case or controversy with a citizen of another State; and (3) that the mere fact that the Constitution guarantees this right to citizens of a State in no way prohibits the Congress from extending the same privilege to others who are not technically citizens of a State.

■ Let us analyze the reasoning of the Court in the Winkler case. In the first place, clause 17 (relating to the District of Columbia) of Article I, Section 8, with or without the help of clause 18 (necessary and proper clause) would not seem to be applicable to the exact situation before us. That the clause gives to Congress the power to exercise exclusive legislation "over" the District of Columbia, or, as stated in Neild v. District of Columbia, 1940, 71 App. D.C. 306, 110 F.2d 246, 249: "within the District for every proper purpose of government", is not denied. For example, Article I, Section 8, is clearly the basis of the power of Congress to give jurisdiction to the federal courts set up *within the District*. O'Donoghue v. United States, supra, 289 U.S. at page 545, 53 S.Ct. 740, 77 L.Ed. 1356; Keller v. Potomac Elec. Co., 1923, 261 U.S. 428, 442, 443, 43 S.Ct. 445, 67 L. Ed. 731; Kendall v. United States, 1838, 12 Pet. 524, 619, 9 L.Ed. 1181. But it is one thing to say that Congress may legislate with respect to jurisdictional matters

666

*within* the District of Columbia where it is given express authority by Article I, Section 8 of the Constitution, and quite another to say that Congress may extend that authority to an enlargement of the jurisdiction of federal courts *outside* the District of Columbia, beyond the limitations of power provided by Article III of the Constitution which created them. The O'Donoghue case, which for the first time held that a constitutional court could receive legislative jurisdiction, does not form a precedent for giving legislative jurisdiction to other District Courts, because the O'Donoghue case was concerned only with a peculiar situation expressly provided for by the Constitution. There the Court said (289 U.S. at page 546, 53 S.Ct. 748, 77 L.Ed. 1356) : "If, in creating and defining the jurisdiction of the courts of the District, Congress were limited to article 3, as it is in dealing with the other federal courts, the administrative and other jurisdiction spoken of could not be conferred upon the former. But the clause giving plenary power of legislation over the District enables Congress to confer such jurisdiction in addition to the federal jurisdiction which the District courts exercise under article 3, notwithstanding that they are recipients of the judicial power of the United States under, and are constituted in virtue of, that article."

Thus, the O'Donoghue case is limited to holding that a court of the District of Columbia is the only court which is both constitutional and legislative. Article I, Section 8 there applied because Congress exercised its legislative powers "over such District."

■ In the second place, Article III of the Constitution *does not guarantee* diversity jurisdiction to citizens of a State as is suggested by Judge Way. It is erroneous to assume that Article III *guarantees* jurisdiction, because it is within the discretionary power of Congress to grant, or to withhold constitutionally limited jurisdiction. Diversity jurisdiction is not a right, but a privilege, resting upon the will of Congress. Lockerty v. Phillips, 1943, 319 U.S. 182, 187-188, 63 S.Ct. 1019, 87 L.Ed. 1339; Lauf v. E. G. Shinner & Co., 1938, 303 U.S. 323, 330, 58 S.Ct. 578, 82 L.Ed. 872; Kline v. Burke Constr. Co., 1922, 260 U.S. 226,

233, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077; Sheldon v. Sill, 1850, 8 How. 441, 449, 12 L.Ed. 1147; Cary v. Curtis, 1845, 3 How. 236, 244-245, 11 L.Ed. 576. In fact, Congress was not even obliged to create any inferior federal courts. Lockerty v. Phillips, supra; Kline v. Burke Constr. Co., supra; Sheldon v. Sill, supra; United States v. Hudson, 1812, 7 Cranch 32, 33, 3 L.Ed. 259.

■ In the third place, the assertion of Judge Way that Article III, Section 2 of the Constitution in no way prohibits the Congress from extending the privilege of diversity jurisdiction to others, who are not technically citizens of a State, is contrary to a long line of Supreme Court decisions to the effect that constitutional courts can exercise no jurisdiction other than that conferred upon them by Congress *within the limits* of Article III, Section 2. Ex parte Bakelite Corp., 1929, 279 U.S. 438, 449, 49 S.Ct. 411, 73 L.Ed. 789; Kline v. Burke Constr. Co., supra; Hodgson and Thompson v. Bowerbank, 1809, 5 Cranch 303, 3 L.Ed. 108.

Thus we are not convinced of the soundness of either the reasoning or the conclusion of the Winkler case. Indeed, Judge Way himself does not seem to have been completely convinced of the correctness of his own arguments. In summing up his position, he says, at page 268 of 43 F.Supp.: "* *. * *it is not at all apparent* that Congress exceeded its powers under the Constitution, * * *" (Emphasis supplied).

Behlert v. James Foundation of New York, supra, which held the statute unconstitutional, is the best reasoned of all the cases. Judge Conger in the Behlert case had the benefit of the Winkler, McGarry and Glaeser cases, supra. He says (60 F. Supp. 708, 709) : "I think that defendants are right in their contention, that, while this Court was created by and its jurisdiction given by Acts of Congress, yet, being a Constitutional Court, such Acts of Congress may not go beyond the jurisdictional boundaries created by Article III of the Constitution.

* * * * * *

"I have come to the conclusion that the rule has been well established by the Supreme Court of the United States that the

Congress may not enlarge the jurisdiction of this Court beyond that fixed by Article III, Section 2 of the Constitution, and that by the amendment of 1940 of Section 24 (1) in so far as it extends the jurisdiction of this court to include controversies between 'citizens of the District of Columbia * * * or any State or Territory' it does go beyond the jurisdiction boundaries fixed by the aforesaid section of the Constitution and is, therefore, unconstitutional.

* * * * * *

"I am convinced that while Congress, under Article I, Section 8, Clause 17 of the Constitution, may provide jurisdiction to the Courts of the District of Columbia beyond that prescribed by Article III, Section 2 of the Constitution, it may not do so with this Court or any Federal Court established under Article III, Section 2 of the Constitution."

■ It has been suggested that Congress, by enacting the 1940 amendment, has, in effect, for purposes of diversity jurisdiction in the federal courts, vested the citizens of the District of Columbia with the character of a citizen of a State, thus making the diversity provision of Article III, Section 2 applicable, whereupon the constitutionality of the amendment could be sustained. See 46 Col. L. Rev. 125-6 (1946). In support of this suggestion, the point is made that the Supreme Court has been somewhat inconsistent in that, under some conditions, it has held the District to be included within the meaning of the word "State" (Cf. Downes v. Bidwell, 1901, 182 U.S. 244, 270, 21 S.Ct. 770, 45 L.Ed. 1088; Geoffroy v. Riggs, 1890, 133 U.S. 258, 10 S.Ct. 295, 33 L.Ed. 642; Metropolitan Railroad v. District of Columbia, 1889, 132 U.S. 1, 9, 10 S.Ct. 19, 33 L.Ed. 231), while, under other conditions, it has held that it is not so included. But this argument overlooks the fact that, with respect to an interpretation of the phrase "between citizens of different States" as it appears in the Constitution, Art. III, Sec. 2, the Supreme Court *has* been consistent in holding that the District of Columbia was *not a State*. Hooe v. Jamieson, supra, Barney v. Baltimore City, supra; Hepburn v. Ellzey, supra; see also O'Donoghue v. United States, supra, 289 U.S. at page 543, 53 S.Ct. 740,

77 L.Ed. 1356. If, prior to the 1940 amendment to 28 U.S.C.A. § 41 (1), the District of Columbia was not a State, in the sense that that word is used in the diversity of citizenship clause of the Constitution, can it be said that now, after the 1940 amendment to the Judiciary Code, the Constitution means something different merely by reason of a construction placed upon it by Congressional legislation? The Constitution, being supreme, is not subject to mere legislative revision.

■ It is apparent that the framers of the Constitution did not have the District of Columbia in mind when they provided (Article III, Section 2) that "The judicial Power shall extend * * * to Controversies * * * between citizens of different States, * * *." The reference to "States" included those units of government—the members of the American confederacy—which came together to form the United States. It included the sovereignties which chose members of the House of Representatives (Const. Art. I, Sec. 2); those whose legislatures elected senators to the Senate of the United States (Const. Art. I, Sec. 3), and those whose conventions were to ratify the Constitution (Const. Art. VII). The word "States" is used as designating a member of a union. Hepburn v. Ellzey, supra, 2 Cranch at pages 452, 453, 2 L.Ed. 332. It would be illogical and unreasonable to extend its meaning to include the seat of the national government.

It has been suggested that an anomalous result is reached in denying jurisdiction over citizens of the District of Columbia on the basis of lack of requisite diversity of citizenship. See Hepburn v. Ellzey, supra, 2 Cranch at page 453, 2 L.Ed. 332; Glaeser v. Acacia Mut. Life. Ass'n, supra, 55 F.Supp. at page 926. It is submitted, however, that this result is only one aspect of what, by its very nature, is an anomalous situation. The District of Columbia, by reason of its being the seat of the national government and under the exclusive jurisdiction of Congress by Article I, Section 8, Clause 17, is totally unlike any other governmental area in our union. It is not like a State. It is not like a territory. It

is an area that is in a class by itself. Its anomalous position has been repeatedly recognized by the Courts. District of Columbia v. Murphy, 1941, 314 U.S. 441, 452, 62 S.Ct. 303, 86 L.Ed. 329; O'Donoghue v. United States, supra, 289 U.S. at pages 538, 539, 53 S.Ct. 740, 77 L.Ed. 1356; Neild v. District of Columbia, supra, 71 App. D. C. 306, 110 F.2d at pages 249, 250. The prima facie discrimination against residents of the District, therefore, loses substance when it is considered in the light of a wholly exceptional situation, created by the framers of the Constitution out of necessity for a national capitol, from whose very nature flow many unusual consequences.

The framers of the Constitution granted diversity of citizenship jurisdiction to the federal courts in order to alleviate fears that suits brought by citizens of one State, in the courts of another State, would be adjudicated unfairly. Polk's Lessee v. Wendell, 1820, 5 Wheat. 293, 302, 5 L.Ed. 92; Bank of the United States v. Deveaux, 1809, 5 Cranch 61, 87, 3 L.Ed. 38; The Federalist, No. LXXX. Cf. Friendly, The Historic Basis of Diversity Jurisdiction (1928) 41 Harv. L. Rev. 483, 496, 497, where diversity jurisdiction is said to be based upon the desire to protect creditors of foreign States from legislation favorable to local debtors. It has been argued that this principle is equally applicable when the suit is brought by citizens of the District of Columbia. See (1946) 46 Col. L. Rev. 125, 126. This argument, which is not based on legal but practical considerations, is sound. It does not, however, meet the constitutional point involved. Nor, in view of the Fourteenth Amendment and Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is this argument entitled to much weight. The resident of the District of Columbia, as far as the diversity of citizenship question is concerned, is not in such an unfavorable position as the proponents of the 1940 amendment would have one believe. While he may not sue in a federal court on grounds of diversity of citizenship, neither may he there be sued, and he still has access to the courts of the District and to those of the several States. Since, under Erie R. Co. v. Tompkins, supra, the federal court, in diversity of citizenship cases, must apply the State law as declared by the highest State court, it is not seen how the resident of the District of Columbia will suffer any substantial disadvantage from having to sue in a State court. The applicable rules of law are the same regardless of the forum.

Furthermore, the citizen of the District is not deprived of recourse to the federal tribunal when a federal question is presented; and, by the Fourteenth Amendment, he is protected against any State abridgement of his privileges and immunities as a citizen of the United States, and also against any deprivation by the State of due process, or denial of the equal protection of the laws. While the Fourteenth Amendment has been held inapplicable to the District of Columbia, Neild v. District of Columbia, supra, at p. 256 of 110 F.2d, yet, since citizens of the District of Columbia are citizens of the United States by that Amendment, they are protected against discriminatory action by any State.

One further argument in favor of allowing diversity jurisdiction in controversies involving a citizen of the District of Columbia is that through a liberal construction of the words "The judicial Power shall extend * * * to Controversies * * * between citizens of different States," as they appear in Article III, Section 2 of the Constitution, the words "shall extend to" need not be construed as words of exclusion, and so do not, by implication, exclude from federal court jurisdiction all classes of cases not enumerated in Section 2. Winkler v. Daniels, supra, 43 F.Supp. at pages 267, 268. However meritorious this argument might have been prior to such cases as Ex parte Bakelite Corp., supra; Kline v. Burke Constr. Co., supra; and Hodgson and Thompson v. Bowerbank, supra, in view of what is now the established rule of constitutional law, namely, that the scope and extent of the jurisdiction of the constitutional courts must emanate from Article III, it would not seem to be tenable.

To summarize and conclude: The amendment of 1940 of Section 24 (1) (b) of the Judicial Code is unconstitutional

because it extends the jurisdiction of the District Courts beyond controversies "between citizens of different States," contrary to Article III, Section 2, of the Constitution. Accordingly, in both of the cases before us, defendant's motion to dismiss for want of jurisdiction must be granted.