## NATIONAL MUT. INS. CO. OF DISTRICT OF COLUMBIA v. TIDEWATER TRANSFER CO., Inc., OF VIRGINIA.

### No. 5674.

Circuit Court of Appeals, Fourth Circuit.

Dec. 31, 1947.

Writ of Certiorari Granted March 29, 1948.

See 68 S.Ct. 746.

---

[8] 2 Cir., 139 F.2d 1007, 152 A.L.R. 296.

[9] 2 Cir., 146 F.2d 469.

[10] United States v. 53¼ Acres of Land, D.C., 48 F.Supp. 768.

Wendell D. Allen and Francis B. Burch both of Baltimore, Md. (John C. Goddin, of Richmond, Va. on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The National Mutual Insurance Company of the District of Columbia, a corporation of the District of Columbia, filed in the United States District Court for the District of Maryland a civil action against Tidewater Transfer Company, Incorporated, a corporation of the State of Virginia. On motion of the defendant, the District Court dismissed the action upon the ground that the Act of Congress of April 20, 1940, 54 Stat. 143, was unconstitutional insofar as it attempts to confer on the United States District Court for the District of Maryland jurisdiction over a civil action between a citizen of the District of Columbia, as plaintiff, and a citizen of the State of Virginia, as defendant. From this judgment, an appeal has been taken to us.

Section 24 of the Judicial Code, paragraph 1(b), 28 U.S.C.A. § 41(1) (b) gave to the United States District Courts jurisdiction of suits of a civil nature "between citizens of different States;" while the statute before us added the words "or citizens of the District of Columbia, the Territory of Hawaii, or Alaska, and any State or Territory."

As far as we have been able to ascertain, the constitutionality of the Act of April 20, 1940, has never been passed upon by a federal appellate court; while a clear cut division of opinion is found in the cases dealing with this problem in the United States District Courts. The constitutionality of the statute has been upheld in Winkler v. Daniels, D.C., E.D.Va., 43 F. Supp. 265; Glaeser v. Acacia Mutual Life Association, D.C., N.D.Cal., 55 F.Supp. 925; Duze v. Woolley, D.C., D. Hawaii, 72 F.Supp. 422. The statute was held to be unconstitutional in Willis v. Dennis, D. C., W.D.Va., 72 F.Supp. 853; Feely v. Sidney S. Schupper Interstate Hauling System, D.C., D.Md., 72 F.Supp. 663; Wilson v. Guggenheim, D.C., E.D.S.C., 70 F.Supp.

PARKER, Circuit judge, dissenting.

———◆———

Theodore Sherbow, of Baltimore, Md., for appellant.

417; Ostrow v. Samuel Brilliant Co., D. C., D.Mass., 66 F.Supp. 593; Behlert v. James Foundation of New York, D.C., S.D.N.Y., 60 F.Supp. 706; McGarry v. City of Bethlehem, D.C., E.D.Pa., 45 F.Supp. 385.

We first consider whether Congress, in enacting the Act of April 20, 1940, proceeded under power outlined in Article 3, Section 2 of the federal Constitution which defines the limits of the judicial power of the United States, or whether Congress proceeded under Article 1, Section 8(17) of this Constitution. Article 3, Section 2 of the Constitution provides that the judicial power of the United States shall extend to controversies "between Citizens of different States", while Article 1, section 8 (17) of the Constitution gives Congress power "to exercise exclusive Legislation in all Cases whatsoever" over the District of Columbia. We think that Congress here proceeded under Article 3, Section 2 of the Constitution and that we must affirm the judgment of the District Court declaring the Act of April 20, 1940, unconstitutional. Even though Congress here is deemed to have acted under Article 1, Section 8(17) of the Constitution, we still think (for reasons subsequently set out) that the Act in question is invalid.

In Hepburn and Dundas v. Ellzey, 2 Cranch 445, 2 L.Ed. 332, Chief Justice Marshall denied the jurisdiction of the United States Circuit (now District) Court on the ground that a citizen of the District of Columbia was not a citizen of a State. Said the great Chief Justice: "This depends on the act of congress describing the jurisdiction of that court." While it is true that he was interpreting only a federal statute (all that was necessary for a decision of the case), it should be noted that both the Constitution and the statute used precisely the same phrase "between Citizens of different States", hence it would seem that the phrase has the same meaning in the statute that it has in the Constitution. Chief Justice Marshall further stated in this case: "But as the act of congress obviously uses the word 'state' in reference to that term as used in the (federal) constitution, it becomes necessary to inquire whether (the District of) Columbia is a state in the sense of that instrument." We are convinced that he thought that the District of Columbia was not a State within the meaning of Article 3, Section 2, of the Constitution. Near the end of the brief opinion, he declared: "It is extraordinary that the courts of the United States, which are open to aliens, and to the citizens of every state in the union, should be closed upon them." (Citizens of the District of Columbia.)

Then he concluded: "But this is a subject for legislative, not for judicial consideration." Counsel for appellant derive great satisfaction from this sentence and contend that the Chief Justice thereby meant that Congress had power, under Article 3, Section 2, of the Constitution, by appropriate legislation, such as the Act of April 20, 1940, to give jurisdiction to the federal courts of suits involving citizens of the District of Columbia.

We cannot adhere to this contention of counsel for appellant. In Willis v. Dennis, D.C., 72 F.Supp. 853, 855, Judge Paul said: "I have little idea that the great Chief Justice intended any such meaning or that he held any such view. I have no doubt that the term 'legislative' was used in its broader sense and to emphasize the distinction between the power to make the law and the power to interpret it, which latter only is entrusted to the judiciary. In such a sense the formulation of all laws, whether they be embodied in the Constitution or be by enactment of Congress, are legislative functions. The opinion makes it clear that the Chief Justice found the barrier to be the Constitutional provision, not the mere inaction of Congress; and it is notable that for the 136 years following this was accepted as the basis of this decision."

Judge Paul, we believe, correctly interpreted the words in the Hepburn case, and those words, even though they may be classified as dicta, are entitled to no little weight.

In Corporation of New Orleans v. Winter, 1 Wheat. 91, 94, 4 L.Ed. 44, Chief Justice Marshall stated: "It has been attempted to distinguish a territory from the district of Columbia; but the court is of opinion that this distinction cannot be maintained. *They may differ in many re-*

*spects, but neither of them is a state in the sense in which the term is used in the constitution."* (Italics ours.)

Said Chief Justice Fuller, in Hooe v. Jamieson, 166 U.S. 395, 397, 17 S.Ct. 596, 597, 41 L.Ed. 1049: "We see no reason for arriving at any other conclusion than that announced by Chief Justice Marshall in Hepburn [and Dundas] v. Ellzey, 2 Cranch 445, [2 L.Ed. 332], (Feb. term, 1805), *'that the members of the American confederacy only are the states contemplated in the constitution'; that the District of Columbia is not a state within the meaning of that instrument,* and that the courts of the United States have no jurisdiction of cases between citizens of the District of Columbia and citizens of a state." (Italics ours.)

In Downes v. Bidwell, 182 U.S. 244, 259, 21 S.Ct. 770, 776, 45 L.Ed. 1088, Mr. Justice Brown said: "The earliest case is that of Hepburn [and Dundas] v. Ellzey, 2 Cranch 445, 2 L.Ed. 332, in which this court held that, under that clause of the Constitution limiting the jurisdiction of the courts of the United States to controversies between citizens of different *states,* a citizen of the District of Columbia could not maintain an action in the circuit court of the United States." (Italics ours.)

Then, in O'Donoghue v. United States, 289 U.S. 516, 543, 53 S.Ct. 740, 747, 77 L.Ed. 1356, we find this statement of Mr. Justice Sutherland: "After an exhaustive review of the prior decisions of this court relating to the matter, the following propositions, among others, were stated as being established: " '1. That the District of Columbia and the territories are not states *within the judicial clause of the Constitution giving jurisdiction in cases between citizens of different states.' "* (Italics ours.)

■ These cases seem to establish the doctrine that Congress, when it acts under Article 3, Section 2 of the federal Constitution has no power to confer upon the District Courts of the United States jurisdiction over civil actions based upon the fact that some of the litigants are citizens of the District of Columbia. Indeed, we go further and assert that, whatever prac-

tical inconveniences or injustices may be thereby entailed, this doctrine is sound in principle.

The cases in the District Courts, holding the Act of April 20, 1940, constitutional seem to concede that this Act cannot be sustained under Article 3, Section 2, of the federal Constitution. These cases are grounded in the doctrine that Congress here proceeded under Article 1, Section 8, of the Constitution, which gives to Congress power "To exercise exclusive Legislation in all Cases whatsoever, over" the District of Columbia, and that the Act of April 20, 1940, is valid as an exercise of Congressional power under Article 1, Section 8, of the Constitution. Winkler v. Daniels, D.C., 43 F.Supp. 265; Glaeser v. Acacia Mutual Life Association, D.C., 55 F.Supp. 925. With this doctrine we cannot agree.

True it is that the legislative power of Congress over the District of Columbia under Article 1, Section 8, of the Constitution is plenary and far-reaching. Said Mr. Justice Shiras in Shoemaker v. United States, 147 U.S. 282, 300, 13 S.Ct. 361, 391, 37 L.Ed. 170: " * * * the United States possess full and unlimited jurisdiction, both of a political and municipal nature, over the District of Columbia, * * *."

Strong language to the same effect was used by Associate Justice Miller (of the United States Court of Appeals for the District of Columbia) in Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246, 249–251: "That delegation is sweeping and inclusive in character, to the end that Congress may legislate within the District for every proper purpose of government. Within the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments. Instead there is a consolidation thereof, which includes within its breadth all proper powers of legislation. Subject only to those prohibitions of the Constitution which act directly or by implication upon the federal government, Congress possesses full and unlimited jurisdiction to provide for the general welfare of citizens within the District of Columbia by any and every act of legislation which it

may deem conducive to that end. In fact, when it legislates for the District, Congress acts as a legislature of national character, exercising complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other."

Even so, we conclude that to a very great extent at least, these powers are territorial. We think Judge Way went too far when he spoke of "the practically unlimited powers granted to Congress over the District which necessarily include jurisdiction over its citizens." Winkler v. Daniels, D.C., 43 F.Supp. 265, 268.

We can find no comfort for the appellant here in O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 750, 77 L.Ed. 1356. Quite the contrary. That case held specifically: "The Supreme Court and the Court of Appeals of the District of Columbia are constitutional courts of the United States, ordained and established under article 3 of the Constitution." This case has come in for some rather severe criticism. For notes on this case, see 47 Harv. L. Rev. 133; 28 Ill.L.Rev. 569; 9 Ind. L.J. 318; 22 Georgetown L.J. 91; 32 Mich.L.Rev. 103; 2 Geo. Wash.L.J. 84. On this point, however, the O'Donoghue case has not been overruled and still remains the law of the land.

In this same case, it was held that Congress (under Article 1, Section 8, of the Constitution) could also confer upon these local courts of the District of Columbia jurisdiction over "administrative or legislative functions" but that this may not be done with federal constitutional courts, established under Article III of the Constitution, outside of the District of Columbia. 289 U.S. 516, at page 551, 53 S.Ct. 740, 750, 77 L.Ed. 1356. Then (on this same page) Mr. Justice Sutherland points out that this dual power of Congress over the courts of the District of Columbia "is not in conflict with the view that Congress derives from the District clause (Article 1, Section 8, of the Constitution) distinct *powers in respect of the constitutional courts of the District (of Columbia) which Congress does not possess in respect of such courts outside the District (of Columbia)."* (Italics ours.)

If Congress, in creating these courts of the District of Columbia (which are local, sui generis and sit only within the territorial confines of the District) acted *even partially* (as the O'Donoghue case held) under Article 3 of the Constitution, then a fortiori (it seems to us) Congress, in attempting to vest jurisdiction in the far flung constitutional District Courts in all 48 of the States and even beyond, must be deemed to have acted *exclusively* under Article 3, Section 2, of the Constitution. We can draw no other rational conclusion from the quoted language of Mr. Justice Sutherland in the O'Donoghue case.

Germane in this connection are the words of Chief Justice Taft in Postum Cereal Co. v. California Fig Nut Company, 272 U.S. 693, 700, 47 S.Ct. 284, 286, 71 L.Ed. 478: "The distinction between the jurisdiction of this court which is confined to the hearing and decision of cases in the constitutional sense and that of administrative action and decision, power for which may be conferred upon courts of the District is shown in the case of Keller v. Potomac Electric [Power] Company, 261 U.S. 428, 440, 442, 443, 43 S.Ct. 445, 67 L.Ed. 731. There it is pointed out that, while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District, not only with the jurisdiction and powers of the federal courts in the several states, but also with such authority as a state might confer on her courts (Prentis v. Atlantic Coast Line Company, 211 U.S. 210, 225, 226, 29 S.Ct. 67, 53 L.Ed. 150), and so may vest courts of the District with administrative or legislative functions which are not properly judicial, it may not do so with this court, or any federal court established under article 3 of the Constitution."

Said Judge Conger, at the end of his opinion in Behlert v. James Foundation, D.C., 60 F.Supp. 706, 709: "I am convinced that while Congress, under Article I, Section 8, Clause 17 of the Constitution, may provide jurisdiction to the Courts of the District of Columbia beyond that prescribed by Article III, Section 2 of the Constitution, it may not do so with this

Court or any Federal Court established under Article III, Section 2 of the Constitution."

See, also, the language of Judge Paul, in Willis v. Dennis, D.C., 72 F.Supp. 853, 854, 855; the language of Judge Coleman, in Feely v. Sidney S. Schupper Interstate Hauling System, D.C., 72 F.Supp. 663, 665, 666; and the language of Judge Waring in Wilson v. Guggenheim, D.C., 70 F.Supp. 417, 419, as to Article 1, Section 8, of the Constitution, which was as follows: "* * * But it is quite apparent from the language of the Constitution itself that it was intended to give to the Congress the right to legislate regarding matters within the territory to be ceded. * * * Nowhere does it appear except by the most strained of constructions that this was intended to give to Congress the right to legislate in regard to the courts which had been authorized and circumscribed by Article I, Section 3,[1] hereinabove referred to, and which lay outside of this territory." We are in full accord with these expressions.

Our conclusion is that Congress, in enacting the Act of April 20, 1940, did proceed under Article 3, Section 2, of the Constitution, defining the judicial power of the United States, and that the Act is therefore unconstitutional. We further conclude that any attempt by Congress to proceed here under Article 1, Section 8, of the Constitution, giving Congress exclusive legislative power over the District of Columbia, would likewise lack validity. Article 1, Section 8, of the Constitution is not to be interpreted and applied as if it were an isolated provision standing alone and apart from the other provisions in that great document; rather is it conditioned by, and to be interpreted in the light of, companion articles. Article 1, Section 8 is thus limited by Article 3, Section 2. These two articles must be construed together so as to harmonize the two and give meaning to each; one article cannot be interpreted to flout what appears to be the clear meaning of the other. Congress therefore, cannot, extend beyond the constitutional limits the jurisdiction of the United States District Courts under the guise of exercising its legislative prerogative that is limited to the District of Columbia.

Counsel for appellant have cited a number of cases in which the District of Columbia has been held to be a "State" within the meaning of various provisions of the federal Constitution other than Article 3, Section 2. We do not find these cases helpful in deciding the instant case. This same argument was made in the Hepburn case, wherein Chief Justice Marshall, 2 Cranch 445, at page 453, 2 L.Ed. 332, tersely observed: "Other passages from the constitution have been cited by the plaintiffs, to show that the term state is sometimes used in its more enlarged sense. But on examining the passages quoted, they do not prove what was to be shown by them."

"Turn to the article of the constitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the constitution." Hodgson and Thompson v. Bowerbank, 5 Cranch 303, 3 L.Ed. 108. We must recognize this stern admonition of Chief Justice Marshall, and we accordingly hold that the Act of April 20, 1940, is unconstitutional.

For the reasons aforesaid, the judgment of the District Court dismissing appellant's complaint must be affirmed.

Affirmed.

PARKER, Circuit Judge (dissenting).

I cannot concur in the decision that the Act of Congress conferring jurisdiction on the District Courts of the United States of suits between citizens of the District of Columbia and citizens of the several states is violative of constitutional provisions or transcends the power of Congress under the Constitution. The securing of justice for its people is one of the first duties of government. With respect to domestic matters this duty is discharged through the maintenance of domestic courts; where justice as against citizens of other countries is sought, the citizen is not left to the mercy of foreign courts but may call upon his country to protect him through its diplomatic service. Under the dual sovereignty of our federal union, the courts of each of

---

[1] This reference should be Article 3, Section 2.

the states furnish a foreign jurisdiction so far as the citizens of other states are concerned, for every state court is agency of a quasi sovereign power to which citizens of the other states of the Union owe no allegiance and over which they have no control. The states, however, as members of the Union, are denied the power of independent nations to pursue justice in behalf of their citizens through diplomatic channels against citizens of other states; and, in lieu of this, the Constitution provides courts of the federal government, the government of all the people of the country, to administer justice in cases where citizens of different states are involved, so that neither party may be required to seek justice from the state of his adversary. This reasoning I understand to lie at the basis of the jurisdiction of the federal courts in diversity cases; and, while I do not think that the District of Columbia is a state within the diversity clause of Art. III of the Constitution, I cannot believe that the citizens of the capital city of the Republic have been left in such position by the Constitution that they cannot be afforded the protection with respect to this fundamental matter that is given all other citizens.[2]

It is well settled that the District of Columbia is not a state within the meaning of the Constitution; and, if the power of Congress to vest jurisdiction in the federal courts were limited to that which may be exercised under Art. III, I would think the legislation here involved to be beyond its power. It is equally well settled, however, that "Article 3 does not express the full au-

thority of Congress to create courts". Ex-parte Bakelite Corporation, 279 U.S. 438, 449, 49 S.Ct. 411, 412, 73 L.Ed. 789. Congress may vest judicial power in courts to hear litigation affecting citizens of the District of Columbia; and I see nothing in the Constitution to forbid such power being vested in the ordinary federal courts created under Art. III. It has been decided that Congress may vest in courts created under art. 1 sec. 8 the jurisdiction which it is authorized to confer under Art. III. O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356. On the same principle it may vest in courts created under Art. III the judicial power, but of course not the non judicial power, which it is authorized to confer by Art. 1 sec. 8.

No one would dispute, I think, the power of Congress to create courts to hear any litigation to which a citizen of the District of Columbia is a party. Such power is inherent in the full power of sovereignty exercised over the District, a power which combines that of the general government and the states. O'Donoghue v. United States, supra; Stoutenburgh v. Hennick, 129 U.S. 141, 147, 9 S.Ct. 256, 32 L.Ed. 637. It seems equally clear that Congress could authorize such courts to sit and their process to run anywhere in the country. If this can be done, I see no reason why Congress cannot combine the jurisdiction of such courts with that of the ordinary federal courts already created under Art. III. Where the question of the validity of an act of Congress is raised, the question is not under what provision of the Con-

---

[2] The question involved is not a theoretical one, but one of great practical significance. To deny to a citizen of the District the right to resort to the federal courts, means that he must seek justice in a court of the state of his adversary, where he will find, in many of the states, that trial by jury has been stripped of many of its safeguards and the judge has been denied the common law powers necessary to the proper administration of justice. See article by Judge Merrill E. Otis, Journal of American Judicature Society, vol. 21, p. 105 et seq. To require a non resident to try his case in such a tribunal is not only to turn him over to the tender mercies of a local jury, without power in the

presiding judge to counteract the appeals to prejudice of local counsel, it is also to deny to him the sort of trial by jury which as a citizen of the United States he is entitled to have in the federal courts. Herron v. Southern Pac. Ry. Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857; Patton v. United States, 281 U.S. 276, 288, 50 S.Ct. 253, 74 L. Ed. 854, 70 A.L.R. 263; Capital Traction Co. v. Hof, 174 U.S. 1, 13–16, 19 S. Ct. 580, 43 L.Ed. 873; United States v. Philadelphia &. R. R. Co., 123 U.S. 113, 114, 8 S.Ct. 77, 31 L.Ed. 138; United States v. Fourteen Packages of Pins, 1 Gilp. 235, 25 Fed.Cas. 1182, 1189, No. 15,151.

538

stitution it has purported to act, but whether, when all provisions of the Constitution are considered, it has transcended the total of the powers granted it by the people. In this case I do not think it can be said that Congress has transcended its powers; and I say this without reference to the well settled doctrine that an act of Congress may not be declared unconstitutional unless its violation of constitutional provisions is established beyond reasonable doubt.

It is suggested that the power to create courts for citizens of the District is limited geographically to the District; but there is nothing in the Constitution from which any such limitation can be spelled out. It should be noted that the power of Congress is not merely to exercise exclusive legislation over the District, but also to make all laws necessary and proper to that end, which certainly would seem to authorize legislation necessary to secure a proper administration of justice for its citizens. See Art. I sec. 8(17) and (18). The power to legislate for the citizens of the District, as we have seen, is full legislative power, combining that possessed by Congress and a state legislature and, except for express limitations contained in the Constitution itself, analogous to the full power possessed by the Parliament of England. Certainly, if Congress is not limited by the territorial boundaries of the country in creating courts to provide a proper administration of justice for citizens resident or doing business in foreign countries, such as consular courts (In re Ross, 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581) or the United States Court for China (Ex parte Bakelite Corp., 279 U.S. 438, 451, 49 S.Ct. 411, 73 L.Ed. 789), there is no reason why it may not provide judicial facilities for citizens of the District of Columbia beyond the limits of the District, for the power to legislate for their protection in this regard is just as clearly given as the power to legislate for citizens of the country resident or trading abroad. That the protection is exercised in this rather than in a foreign country would seem to support rather than to negative the right to exercise it.

The fact that Congress may not confer on the District Courts jurisdiction of suits in which citizens of states are involved unless there is diversity of citizenship, furnishes no argument that the power does not exist with respect to suits involving citizens of the District; for the only authority in the former case to vest judicial power in the courts arises under the provision relating to diversity of citizenship, whereas in the latter case full power is granted to legislate for citizens of the District. That the diversity clause is construed so as not to apply to citizens of the District is an added reason for construing the provisions of Art. I sec. 8 as authorizing legislation which would make the federal courts available to them; for it is not reasonable to suppose that the founders of our government intended that it be powerless to afford the protection of its own judiciary to citizens of its capital city.

More than a century ago Chief Justice Marshall pointed out what he thought was the extraordinary situation that, under the Judiciary Act, the District Courts of the United States, which were open to aliens and to citizens of every state in the Union, should be closed to citizens of the nation's capital. Since then the capital has become a large and florishing city with citizens who trade and travel and do business throughout the Union. The right to invoke the jurisdiction of the only sovereignty to which they owe allegiance and to which they can look for protection has become an increasingly important one and has at length been recognized by Congress in the passage of legislation, which opens the federal courts to them on the same conditions that these courts are open to other citizens of the Republic. For the reasons which I have endeavored to set forth, I do not think this salutary legislation beyond the power of Congress, when the provisions of Art. I sec. 8, as well as the Third Article of the Constitution, are considered.