John MacQueen, Appellee, *vs.* William H. Anderson
*et al.* Appellants.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

Injunction—*when defendants must prove such facts as would
entitle them to specific performance.* Defendants to a bill to en-
join them from interfering with the complainant's possession of
land, who base their claim to the land on a parol lease and agree-
ment with the complainant's grantor, must prove such a state of
facts as would entitle them to specific performance, and it is es-
sential that the parol contract and its terms be established by clear
and unequivocal evidence.

Appeal from the Circuit Court of DeKalb county; the
Hon. Mazzini Slusser, Judge, presiding.

William W. Hoover, William L. Pierce, and Alex-
ander J. Strom, for appellants.

Cliffe & Cliffe, and James N. Finnegan, for ap-
pellee.

Mr. Justice Cooke delivered the opinion of the court:

On April 3, 1915, appellee, John MacQueen, filed his bill
of complaint in the circuit court of DeKalb county against
appellants, William H. Anderson and Bessie Anderson, to
restrain them from interfering with his possession of a cer-
tain 78-acre tract of real estate in DeKalb county and from
further trespassing on said premises and interfering with
appellee in the improvement of the same. A temporary in-
junction was issued in accordance with the prayer of the bill.
As grounds for the relief sought, the bill alleged that ap-
pellee is the owner in fee simple of the 78 acres in contro-
versy, having derived title to the same on October 2, 1914,
by warranty deed from Thomas Renwick; that in accord-
ance with the terms of the deed, the appellee, on March 1,
1915, entered into possession of the premises and through

his agents and servants commenced constructing fences upon and along the boundary lines thereof; that for the purpose of fencing the premises appellee erected thereon a line of posts set in cement, intending to place upon the same woven wire, and that afterwards, in the night time, appellants entered upon the premises and with force and violence removed the posts from the cement holding the same in the ground and entirely ruined and destroyed the cement work; that appellant William H. Anderson has given out in the community that he intends to deprive appellee of the use and benefit of the premises and to destroy the property of appellee thereon, and has destroyed the property of appellee on said premises, and has committed repeated trespasses thereon forcibly and in open defiance of the law and threatens to continue and repeat his unlawful acts; that appellee now has a force of men at work replacing the line of posts and fence destroyed by appellants, as aforesaid, and that appellant William H. Anderson threatens to again destroy the same.

Appellants answered the bill, denying that appellee entered into possession of the premises on March 1, 1915, or at any time prior to the filing of the bill herein. The answer admits that appellants removed material placed upon said premises by appellee for the purpose of constructing fences thereon, but claims lawful right and authority on the part of William H. Anderson, as tenant in possession of the premises, so to do. The answer further admits that appellant William H. Anderson, on or about March 15, 1915, plowed furrows across and upon a certain meadow on the premises, as alleged in the bill, but avers that he had a right, as lessee of the premises, so to do, and admits that appellant William H. Anderson ordered the employees of appellee off the premises. The answer further admits the removal of the fence posts set in cement upon said land by appellee, as alleged in the bill, but denies that the posts were removed during the night time. As justification for the alleged acts

of trespass the answer avers that on April 3, 1909, and for several years prior thereto, Thomas Renwick was the owner of the premises described in the bill of complaint and appellant William H. Anderson was in possession of said premises as tenant of Renwick; that on or about April 3, 1909, in a conversation with appellants, Renwick offered to rent to appellants the premises in controversy during the term of Renwick's life for an annual rental of $3.50 per acre; that in said conversation Renwick was informed by appellants that about 45 acres of said tract needed tiling, whereupon Renwick stated to appellants that he would not expend any more money on the land, but that if appellants would tile the land and make other and further necessary and valuable improvements upon the land they could have it as long as he (Renwick) lived, at the same yearly rental, viz., $3.50 per acre, as they had been paying, and that he would never raise the rent on them; that in this conversation Renwick further stated to appellants that he would give the land absolutely to appellant Bessie Anderson, his daughter, at his death, in consideration of appellants' improving the land and paying him the annual rental during his lifetime; that appellants accepted said proposition, and it was agreed that said lease was to begin at once, and appellants thereupon entered into and upon the premises in pursuance of the terms of said lease and have continuously been in possession of said land since that time; that appellants, relying upon said agreement, thereafter laid out and expended a large sum of money in tiling the land; that they have also, each year since the making of said agreement, placed on said land large quantities of manure made on the adjoining farms of appellants; that they have furnished the seed with which to seed the land, have ridded the land of wild morning glories, cockle-burs, Canada thistles and other noxious weeds, have taken out the line fence theretofore existing between the lands of appellants and the land in controversy, have cleared off and put in a state of cultivation from six to seven acres

of the theretofore uncultivated and unproductive portions of said land, have picked up and hauled off a great many stones from the land, have built about thirty-five rods of line fence between the real estate in controversy and the adjoining land owned by appellee, and have made other valuable and lasting improvements on the land, thereby more than doubling the value of said land, and that during all said time appellants have been in the peaceable and quiet possession of said land in accordance with the terms of the said agreement with Renwick and have annually paid to Renwick the rent as aforesaid; that since the making of said agreement neither Renwick nor anyone for him has paid out any money on account of said land except for taxes, and that appellee had knowledge at all times of the rights of appellants in the premises.

Thereafter appellee filed an amendment to the bill of complaint, alleging that appellants falsely pretend that on or about April 3, 1909, Thomas Renwick, in a conversation with appellants, agreed with them that they should have the use of said premises during the term of Renwick's life for an annual rental of $3.50 per acre per annum, and, further, that at the death of Renwick the said land should become the property of appellant Bessie Anderson; that Thomas Renwick denies that any such contract or agreement was ever made, but that appellants are claiming that upon the death of Thomas Renwick appellant Bessie Anderson will become the owner of the premises and that they are entitled to the use of the premises during the lifetime of Thomas Renwick by virtue of the alleged agreement, and that aplants are making their said claim known to the public generally in the community, which claim and pretenses tend to depreciate the value of appellee's property and constitute a cloud upon his title; that the alleged contract is not in writing, and appellants only claim that the same was an oral contract, wherefore appellee charges that the same is void by reason of the Statute of Frauds; that there was no part

performance of the alleged contract by appellants and that possession of the premises was not taken by appellants under the alleged agreement with Renwick. This amendment to the bill contained the further prayer that the alleged contract between Thomas Renwick and the appellants be declared null and void and be set aside as a cloud upon the title of appellee, and that the title of appellee be confirmed and quieted.

Upon the filing of the amendment to the bill it was agreed between the parties that the answer to the bill should stand as the answer to the bill as amended, and that all proper replications should be considered as filed. After hearing the evidence the court entered a decree finding all the issues in favor of appellee and granting the relief prayed for in the bill as amended. With reference to the claim made by appellants to the premises, the court made the finding, among others, "that said parol agreement has not been established by such clear and definite proof as is required by the law in such cases." From the decree so entered by the circuit court appellants have prosecuted this appeal.

To maintain their position the appellants must establish such a state of facts as would entitle them to relief in a suit for specific performance. Before a parol contract can be specifically enforced, certain conditions must exist and be proved. One is, that the contract and its terms must be established by clear and unequivocal evidence. (*Langston* v. *Bates,* 84 Ill. 524; *Barrett* v. *Geisinger,* 148 id. 98; *Lonergan* v. *Daily,* 266 id. 189; *Christensen* v. *Christensen,* 265 id. 170.) It will be necessary to review the evidence introduced to determine whether the finding of the court that the contract was not proved is correct.

The proof shows that appellant Bessie Anderson is the wife of the appellant William H. Anderson and is a daughter of Thomas Renwick. She was married to Anderson in 1896, and with her husband lived in the State of Iowa until 1900, when her father, Thomas Renwick, who lived in

DeKalb county and who owned considerable land in that county, went to her home in Iowa and proposed that if she and her husband would return to Illinois he would deed her 160 acres of land. Appellants accepted this offer and returned to Illinois, and Renwick conveyed to Mrs. Anderson 160 acres of land adjoining the 78 acres in controversy on the west. At the time of the gift of the 160 acres to his daughter, Renwick was seventy-five years of age and resided in Kirkland, DeKalb county. He had two other children and owned 473 acres of land near Kirkland in addition to the 160 acres which he conveyed to appellant Bessie Anderson and the 78 acres in controversy. About a month after receiving the deed to the 160 acres from her father, appellant Bessie Anderson conveyed the west 80 acres thereof to her husband. Appellants built a dwelling house and other improvements upon the 80 acres to which Bessie Anderson retained title and which adjoined the 78 acres in controversy on the west. There are no buildings of any kind on the 78-acre tract in dispute. When appellants took possession of the 160 acres, Renwick leased the 78 acres to appellant William H. Anderson, receiving an annual cash rental of $3 per acre for two or three years, after which the annual rental was increased to $3.50 per acre. In the spring of 1909 appellant William H. Anderson requested Renwick to tile a portion of the 78 acres. The testimony as to what conversation occurred following the making of this request is conflicting. Renwick testified that he told Anderson he was not getting rent enough to warrant him in making any improvements on the land, and that Anderson replied, "If I tile it you won't raise the rent on me any more?" to which Renwick replied, "No, I won't," and that Anderson afterwards proceeded to put in tile on the 78 acres. Renwick denied that he told Anderson that he could have the land for the same rent as long as he (Renwick) lived, but admitted that he might have told him that the land was to go to Mrs. Anderson upon his death.

Appellant William H. Anderson testified that when he requested Renwick to tile the land the latter replied that he did not think it would bring in any more income if he tiled it; that he (Anderson) told Renwick that if he would tile it he would pay him more rent, and that Renwick said he would consider the matter and would give him an answer within a few days; that Renwick came to the Anderson home a few days later, and while they were in the field told Anderson that he still thought it would not pay him to tile the land, but said to Anderson: "You know, Will, I have always told you I intended this eighty to go to Bess when I am through with it, and if you will tile it out you can have it for the same rent as long as I live, and then I intend it to go to Bess," meaning appellant Bessie Anderson, and that he further said, "but you will have to keep it up, because I don't want to lay out anything more on it;" that he (Anderson) replied, "All right;" that he would accept the offer.

Appellant Bessie Anderson testified that on the occasion about which her husband testified, when her father and husband returned to the house she said to Renwick, "Father, are you going to tile this land for us?" and that Renwick replied, "No, you know, both you and Will, that I have always told you that I intend that piece of land to go to you when I am through with it, so I told Will out there in the field that if he wanted to tile it out he could put in all the tile he wanted to and he could have it for the same rent as long as I lived, and then when I am through with it, it is to go to you;" that he further said, "I won't raise the rent on you, but you and Will will have to keep it up, because I don't want to put any more money in the land."

It appears from the testimony of appellants, and is corroborated by the testimony of other witnesses, that during the spring of 1909 Anderson removed the fence between the tract in controversy and the 80 acres belonging to Mrs. Anderson, adjoining it on the west; that he tiled about

45 acres of the 78-acre tract at an expense of between $100 and $200; that he cleared the land of morning glories, cockle-burs and Canada thistles; that beginning with the year 1909 he hauled upon this tract between 300 and 400 loads of manure each year; that he grubbed out and blasted numerous stumps scattered over six or seven acres of land, and picked up and hauled from the land large quantities of stone and rebuilt and repaired the fences.

Renwick testified that in March, 1914, he told William H. Anderson that he had concluded to sell the 78-acre tract; that Anderson asked him what he would take for it, and he replied that he wanted $16,000 for it; that Anderson said he was buying land at about $110 per acre and could not afford to buy the 78 acres. With reference to this conversation Anderson testified that during the early part of the year 1914 he met Renwick on the street in Kirkland; that Renwick said to him, "Don't you want to buy that eighty of mine up there?" and that he inquired, "What eighty?" that Renwick replied, "Why, that eighty of mine you are working;" that he (Anderson) said, "No, I don't want to buy it," and Renwick said, "If you want to buy it I will sell it to you for $200;" that he (Anderson) replied, "I got my last piece pretty cheap; I only paid $110; I paid $112, but I got half the crop and I left it standing," and that he then remarked, "Well, you would not want to sell that eighty, would you?" to which Renwick replied, "Yes, I am thinking some of selling it; I want to get my business straightened up before I quit here." Anderson testified that this was all the conversation at that time, but that later, during the month of March, when he paid the rent, Renwick said, "You ain't made up your mind to buy that eighty, have you, Will?" and that he (Anderson) replied, "No, I have not," and that Renwick remarked, "All right," and that nothing further was said upon that subject.

On April 27, 1914, Renwick entered into a written agreement with appellee, John MacQueen, by which he agreed to

sell and convey by warranty deed to appellee the 78 acres in controversy for $16,000.   One thousand dollars of the purchase price was paid at the time the contract was executed and the agreement provided that the balance of $15,000 should be paid on March 1, 1915, when, as provided by the agreement, the deed should be delivered and possession given to appellee.   Thereafter, on or about September 26, 1914, appellee called upon Anderson, informed him that he had purchased the 78 acres from Renwick, and asked him if he would rent him (MacQueen) the land for fall feeding, so that he could get possession of the land during the fall and build the fence; that Anderson seemed surprised when he told him he had bought the land, and said, "Well, you won't get on it next year," to which appellee replied, "That all remains to be seen; I am not doing any business with you at all, and you and I can have no trouble, because if you have trouble it will be with your father-in-law; I have got a contract to have the land the first day of next March, and I get possession;" that Anderson informed him that he had a lease, and he asked him, "How long does your lease run?" to which Anderson replied, "Well, I have no written lease." Concerning this conversation Anderson testified that he was in the field, plowing, when MacQueen came out to see him about renting the land; that appellee said, "You know, Will, I bought that eighty up there;" that he (Anderson) replied, "I didn't know anything about it;" that appellee said, "Yes, I did;" that he (Anderson) asked, "When did you buy it?" and that appellee informed him that he had bought it in April; that he (Anderson) said, "It is funny you or Mr. Renwick didn't give me notice that you had bought it before I had done part of my fall work," and that appellee replied, "Well, that was up to the old man and I;" that he (Anderson) said to MacQueen, referring to the 78 acres, "You won't get it in '15, and I have my doubts about you ever getting it."   Shortly after this conversation between appellee and appellant William H. Anderson, and on Octo-

275 — 27

ber 2, 1914, Renwick executed and delivered to appellee a warranty deed conveying the premises in controversy to appellee, the consideration for the conveyance being $16,000. It was provided in the deed that possession should be given to the grantee on March 1, 1915.

William H. Anderson testified that some time during the month of October, 1914, he had another conversation with Renwick about the 78 acres; that he said to Renwick, "You have sold that eighty up there?" and Renwick replied, "Yes, I thought I would sell it, because there would be trouble over it after I was gone;" that he (Anderson) said, "Well, don't you remember what the bargain was when I tiled out that eighty?" and that Renwick replied, "Yes, I know I told you if you would tile it out you could have it for the same rent you was paying, and I always intended it to go to Bess, but I have changed my mind now; I ain't going to give it to her; if I owe you anything for them tile I will pay you." Anderson testified that he got up and left the house without saying anything further and has not talked to Renwick since about the matter.

Appellant Bessie Anderson testified that she last talked to her father when the deed to appellee was signed, on October 2, 1914; that she went to her parents' home intending to protest against her father selling the 78 acres; that while she was there her father and a notary entered the house with a document, which the notary laid on the stand and told her father to sign; that her father signed the instrument, and she asked him if it was a deed but received no answer; that she protested and said it was not right,— that it was not fair that he should sell that land; that he had always told her that she was to have that piece of land when he was through with it, and that she did not think he had any right to sell it; that her father said, "You have repudiated me," to which she replied, "I never repudiated you."

On December 2, 1914, two notices were served upon appellant William H. Anderson, notifying him that his lease to the 78 acres in controversy would be determined on March 1, 1915, and that he should quit and deliver up possession of the premises on that date. One of the notices was signed by the appellee and the other by Thomas Renwick. Shortly after March 1, 1915, employees of appellee entered upon the land and started to clear the land of brush and fallen trees and to build a fence between the 78-acre tract and the land of appellant Bessie Anderson on the west. The proof shows that the posts for the fence were set in cement, and that after appellee's employees had quit work for the day appellants proceeded to pull up the posts which had been set that day. This continued for three days, appellee's workmen replacing the posts and appellants removing them, until the temporary injunction herein was served upon appellants. It was also shown that on the second day of March, while one of appellee's employees was engaged in clearing the land of brush, appellant William H. Anderson approached him and ordered him off the land, and when he refused to leave said to him, "Do you know I can take a gun right out here and shoot you? I have got the law on my side and can take a gun right out here and shoot you."

The evidence offered on behalf of appellee tends to show that the rental value of the land in controversy in 1909 was about $5 per acre, and that since that time there has been a gradual increase in the rental value, until in 1914 the rental value of the 78 acres was $7 or $8 per acre. The evidence offered on behalf of appellants, on the other hand, tends to show that $3.50 was a fair rental value in 1909, but since that year the rental value has increased at least $3 per acre.

It is not necessary to analyze or discuss the evidence. A mere statement of the proof made is sufficient to disclose that the finding of the chancellor is correct. The evidence on the part of appellants, standing alone, is not sufficient to establish the existence of the alleged contract by the clear

and unequivocal proof required. It is therefore unnecessary to consider any of the other questions raised.

Ample grounds were shown for the issuance of the writ of injunction.

The decree of the circuit court is affirmed.

*Decree affirmed.*