CENTRAL STATES COOPERATIVES, Inc.
v. WATSON BROS. TRANSPORTA-
TION CO., Inc.

No. 9291.

United States Court of Appeals
Seventh Circuit.

Feb. 10, 1950.

Rehearing Denied April 6, 1950.

Theodore R. Sherwin, Chicago, Ill., for appellant.

Thomas G. McBride, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Central States Cooperatives, Inc. (hereinafter referred to as Central States) on October 2, 1946, filed in the Municipal Court of Chicago its complaint against Watson Brothers Transportation Company, Inc. (hereinafter referred to as Watson Brothers), for possession of certain described premises based upon the forcible entry and detainer statute of the State of Illinois, Ill. Rev. Stat. 1949, Ch. 57. Upon petition of Watson Brothers the cause was removed to the United States District Court. Watson Brothers by its answer denied that it was wrongfully in possession of the premises and relied upon the terms and provisions of an oral lease made with Central States. The cause was tried to a jury, and admittedly Watson Brothers had the burden of proving its affirmative defense, that is, that it was entitled to possession because of such oral lease. At the conclusion of the evidence offered by Watson Brothers, the court directed a verdict in favor of Central States, and on December 23, 1946, entered its judgment, decreeing that Watson Brothers restore possession to Central States and reciting that on the motion of Watson Brothers "supersedeas bond on appeal be and it is hereby fixed at the sum of Twenty Thousand Dollars ($20,000.00)."

Thereupon, Watson Brothers perfected its appeal to this court. On September 23, 1947, during the pendency of such appeal, Watson Brothers filed in this court its motion for an order to reverse the judgment appealed from and to remand the cause to the District Court with instructions to dismiss the complaint for the reason that there was no longer any actual controversy involving real and substantial rights between the parties but only an abstract and moot question. The motion also requested in the alternative that the judgment be reversed and the cause remanded with instructions to the District Court to remand the cause to the State court on the ground that the District Court was without jurisdiction.

On October 30, 1947, this court entered an order denying the motion by Watson Brothers, without prejudice to its right to renew the same at the time of hearing on the merits. Thereupon this court held that the court below was without jurisdiction. Central States Co-ops. v. Watson Bros. Transp. Co., 7 Cir., 165 F.2d 392. This holding was reversed by the Supreme Court, 337 U.S. 951, 69 S.Ct. 1525, in the light of its decision in National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, and the cause remanded for further consideration, whereupon this court, on September 14, 1949, in conformity with the mandate of the Supreme Court, vacated its previous judgment predicated upon lack of jurisdiction. The case was set for oral argument and Watson Brothers renewed its motion, originally denied without prejudice, to reverse and remand with directions that the complaint be dismissed as no actual controversy remained between the parties and that the issue for decision was moot.

There is no dispute as to the facts relied upon by Watson Brothers in support of this motion. As shown in the original motion, Central States on July 14, 1947 sold and conveyed the premises in controversy to Yellow Terminals, Inc., whereupon the latter company on August 5, 1947 filed in the United States District Court its suit against Watson Brothers for possession of the same premises. By the renewed motion it was further shown that Watson Brothers on December 4, 1947 surrendered possession of the premises in controversy to Yellow Terminals, Inc., and that the latter took possession on said date. Also, it is shown that Central States on or about February 7, 1948, instituted an action in the Superior Court of Cook County against Watson Brothers to recover for the reasonable rental value of the premises in controversy and for numerous other items of damage alleged to have been sustained on account of Watson Brothers' wrongful possession of the property.

Thus there is no question but that Central States has sold and conveyed the property to Yellow Terminals, Inc., that Watson Brothers has surrendered possession to Yellow Terminals, and that Central States has pending in the State court an action for damages against Watson Brothers for its wrongful possession.

In support of its motion, Watson Brothers cites and relies entirely upon Heitmuller v. Stokes, 256 U.S. 359, 41 S.Ct. 522, 65 L.Ed. 990. There the court, with a situation before it quite similar to that which now confronts us, held that the question of the right to possession had become moot and it reversed and remanded the cause to the court of original jurisdiction with directions that the complaint be dismissed. The holding in that case, if controlling, would seem to require affirmative action on the motion under consideration. Since then, however, we have had Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, which calls for the invocation of the State rule where substantive rights are affected. The question thus posed is whether the issue on the motion is substantive or procedural. If the former, the rights of the parties must be determined by the Illinois law; if the latter, the Heitmuller case, supra, governs.

Watson Brothers contends that there is no subject matter upon which the judgment of the court can now operate. Of course, that is true provided the assertion is limited solely to the right of possession. But the judgment taxes costs of suit against Watson Brothers. More than that, the judgment, at Watson Brothers' request, provides for a supersedeas bond so that it might upon the giving of such bond continue its decreed wrongful possession pending appeal. Such bond in the amount of $20,000.-00 was filed, on condition that it "shall prosecute said appeal with effect and moreover pay all rent now due or that may become due before the final determination of this suit, and also all damages and losses which the said Central States Cooperatives, Inc., may sustain by reason of the withholding of the premises in controversy and by reason of any injury done thereto during such withholding, until the restitution of the possession thereof to the plaintiff, together with all costs accrued or that may accrue in case the judgment from which the appeal is taken is affirmed or said appeal dismissed, then the above bounded obligation to be void, otherwise to remain in full force and effect."

Central States makes an impressive showing as to the damages it has sustained by reason of the retention of possession of the property by Watson Brothers. While the amount of damages sustained by reason thereof may or may not be material to the instant motion, it is shown, among other things, that Central States collected no rent from Watson Brothers after October 1, 1946 (the date it was decreed entitled to possession), and that it could not accept such rent without waiving its right to possession. It was required to pay taxes, insurance and other maintenance expenses on the premises, as well as rental for other property which it acquired for the conduct of its business. That Central States was forced into this position by reason of the supersedeas bond given by Watson Brothers, and that the latter was enabled to enjoy the benefits accruing from possession by reason of such bond, is not open to

question. Watson Brothers asserts that the only purpose of Central States in resisting the motion and in arguing for an affirmance of the judgment is that it may be placed in a position to bring suit on the bond for its damages. Even so, that was the very purpose for which the bond was given, which by its terms obligated Watson Brothers to respond in damages in case the judgment was "affirmed or said appeal dismissed."

Neither does the fact that Central States, subsequent to October 1, 1946, sold the premises nor that more than a year later possession was relinquished by Watson Brothers, negative the fact that Central States acquired a valuable and substantial right against Watson Brothers by reason of the bond. Nor do we think that the rights of Central States have been impaired by its suit in the State court for damages which may or may not be covered by the supersedeas bond. It would appear in the event the judgment appealed from is affirmed that Central States is entitled to recover its damages from Watson Brothers, and we need not now be concerned with the forum where such recovery is sought. And it may be noted that the appearance of Central States in the Federal court was involuntary. It was brought into the District Court on the petition of Watson Brothers and into this court on the latter's appeal.

■ We think that the question presented involves substantive rather than procedural rights. There was inherent in the judgment for possession in favor of Central States rights which were substantial. By that judgment it was awarded its costs of suit against Watson Brothers and it acquired the right to be protected in the event there was an appeal by the latter. And such right was clearly recognized by Watson Brothers by its supersedeas bond, which enabled it to retain possession upon the assumption of an obligation to protect Central States against damage by reason thereof. So we must look to the rule of the State in determining the rights of the parties.

The rule in Illinois by a long line of authorities clearly requires that Watson Brothers' motion be denied. In Daggitt v. Mensch, 41 Ill.App. 403, 405, affirmed 141 Ill. 395, 31 N.E. 153, the court stated: "We have held that a conveyance *pendente lite* by the plaintiff in an action of forcible detainer, does not affect his right to recover, if at the commencement of the suit he was entitled to the possession. Bell v. Bruhn, 30 Ill.App. 300. And the same result attends any change of possession. Patterson v. Graham, 40 Ill.App. 399."

In Hickox v. Armstrong, 181 Ill.App. 107, 109, the court, quoting from Patterson v. Graham, 40 Ill.App. 399, stated: " 'The plaintiff has a right to pursue his proceeding to judgment, after he has, pending the action, obtained possession, for the purpose of fixing liability on the appeal bond for the wrongful detention of the premises.' "

In Golden v. Menker, 132 Ill.App. 25, 29, the court stated: "The material question was, whether appellee was entitled to possession when he brought suit, and notwithstanding he may have conveyed all his interest to a third person after suit brought, the suit might properly proceed to judgment in his name for the benefit of his grantee."

Other cases which support the right of Central States to proceed to judgment are Patterson v. Graham, 40 Ill.App. 399, affirmed 140 Ill. 531, 30 N.E. 460; Johnson v. Shinkle, 50 Ill. 137; Glanz v. Ziabek, 233 Ill. 22, 84 N.E. 36; West Side Trust & Savings Bank v. Lopoten, 358 Ill. 631, 193 N.E. 462.

■ We are in hearty accord with the rule as announced by the Illinois courts. To permit Watson Brothers to escape the effect of their own handiwork in the manner now sought would result in a plain miscarriage of justice. Watson Brothers having selected its forum first by removal from the State to the United States District Court, and by appeal to this court from an adverse decision below, now seeks to make its exit by way of the rear door. We think it must get out of the Federal court as it entered, that is, through the front door. The motion to reverse the judgment and to remand the cause to the District Court with instructions to dismiss the complaint is denied.

Prior to a consideration of the case on its merits, we note that the court on January

23, 1947 (the judgment was rendered December 23, 1946), apparently over the objection of both parties, made findings of fact and entered its conclusions of law. Presumably this was done in support of the judgment which it had theretofore rendered. Watson Brothers argues, and Central States does not contend to the contrary, that this action on the part of the court was improper inasmuch as the judgment rested upon a directed jury verdict. However, Central States during oral argument before this court agreed that we ignore such findings, and this we shall do. In view of this situation, it would seem that Watson Brothers cannot complain even though such findings were improperly made.

At the time of the commencement of the suit and at the time of the entry of the judgment, Watson Brothers was in possession of the premises in dispute under a written lease wherein one Charles H. Morse, Jr. was lessor and Watson Brothers lessee, covering the term from October 1, 1945 to September 30, 1946. The premises are located at 3201 South Iron Street, Chicago, facing the Chicago River, and consist of a garage 100 x 100 feet in size, and a dock or loading platform containing an office, attached to the garage, 200 feet long and 32 feet wide. The lease contained a provision that Morse, upon at least ninety days' written notice to Watson Brothers of his intention to do so, might cancel and terminate the said lease in the event of a bonafide sale, provided that Morse should give notice to and permit Watson Brothers within ten days of the receipt of the notice, upon Watson Brothers' written election, to purchase the premises upon like terms, conditions and for like considerations. Morse on May 27, 1946 made a contract with Central States to sell the premises in question to it for the sum of $100,000 cash. Thereupon, Morse gave notice in writing to Watson Brothers of such intention, and of the terms, conditions and considerations of the contract. Such notice was received by Watson Brothers on June 1, 1946. Thus, Watson Brothers had until June 10, inclusive, to exercise its option to purchase, and there is no dispute but that Watson Brothers was correctly informed as to the terms upon which Morse proposed to sell to Central States and, therefore, no question but that Watson Brothers knew the terms which it must meet in order to exercise its option.

We think a fair and succinct statement of the issues are whether Watson Brothers made a valid oral agreement with an authorized representative of Central States for the property in controversy. A negative answer to this issue will make it unnecessary to consider any other questions. An affirmative answer, however, will make it necessary to consider the further issue as to whether there was part performance by Watson Brothers of the terms of the oral lease so as to remove it from the Illinois statute of frauds which otherwise is admitted to be applicable.

Watson Brothers in support of its affirmative defense offered two witnesses, namely, William M. Wolfe, its vice president and an attorney, and Laurie L. Lehtin, employed by Central States in the capacity of general manager. Lehtin's testimony is confined to his purported authority to act for Central States in making a lease for the premises. Therefore, reliance is placed entirely upon the testimony of Wolfe to prove that an oral lease was made.

On the morning of June 6, 1946, Wolfe came to Chicago from the main office of Watson Brothers in Omaha, Nebraska. All the conversations between Wolfe and parties alleged to represent Central States took place on that and the two succeeding days, as Wolfe returned to Nebraska on June 8. Wolfe had two conversations with Lehtin on June 6, one in the morning and the other in the afternoon. We need not go into details of these conversations because it is not claimed that there was any agreement between Wolfe and Lehtin concerning a lease; in fact, these conversations emphasize the wide gulf which separated what Wolfe desired in the way of a lease and what Lehtin was willing to grant. Lehtin's position was that Central States was in need of the premises for the conduct of its business but expressed a willingness to permit Watson Brothers' use of the dock space only. Wolfe's position was that this space would be of no benefit to Watson

694

Brothers. In the afternoon conversation, Lehtin stated to Wolfe, "I want you to see Mr. Richter. * * * You talk to Richter. He is in position to talk for us." This is important because it is the sole basis for the claimed authority on the part of Richter to represent Central States in the consumation of a lease.

Richter was in the real estate business and was representing Morse, the owner of the property, in his proposed sale to Central States. Wolfe called Richter by telephone and made an appointment for the afternoon of the next day (June 7). At the appointed time, Wolfe went to Richter's office.[1] Wolfe had two conversations with Richter that afternoon, one at the office and one at the dock on the premises in dispute. It is not pretended that any agreement as to a lease was reached during the office conversation. That conversation reveals substantially the same diversity of views between what Wolfe desired and what Richter suggested, as is shown by the previous conversation between Wolfe and Lehtin. The conversation was concluded by Wolfe's proposal that Watson Brothers be permitted to remain in the building until it could construct a new building, and offered to pay an additional $150.00 per month, which would make a monthly rental of $1,000.00. In response to this Richter stated, "I will talk to Mr. Lehtin and I will let you know." Later in the afternoon Wolfe and Richter went to the premises, when Wolfe demonstrated to Richter the physical impossibility of Watson Brothers using the dock alone. Wolfe among other things proposed that Central States could use part of the garage and part of the office, and "it was not determined exactly how much or what part of the office. It was left hanging fire, and he [Richter] said, 'What will you pay for that much?'" In response to this, Wolfe stated, "Well, I will tell you what we will do. We will continue to pay $850 a month and we will let these people have part of the office, part of the garage, and construct the shed

without any charge to them." There was some further conversation as to when Watson Brothers could vacate the premises. Wolfe expressed the view that it would depend on how long it would take the contractors to construct its new building, and he thought it would take nine months in addition to the three months which it had under its existing lease. Wolfe testified, "I definitely agreed with him we would have a lease for nine months time." He also testified that he told Richter it would be $850.00 a month, "giving the Central States Cooperatives also use of the same property," and that Richter said, "That is a deal."

Assuming arguendo that Richter was authorized to act for Central States in the leasing of the premises, it is evident that this conversation as testified to by Wolfe does not establish a lease by such clear and unequivocal evidence as the law requires. Christensen v. Christensen, 265 Ill. 170, 174, 106 N.E. 627; MacQueen v. Anderson, 275 Ill. 409, 413, 114 N.E. 159; Lonergan v. Daily, 266 Ill. 189, 192, 107 N.E. 460. True, Wolfe stated, "I definitely agreed with him we would have a lease for nine months time." That statement was not one of fact but a conclusion of the witness, and even though admitted without objection is without probative value. But accepting the statement at its face value, what property was included in the lease referred to? Wolfe had repeatedly been told both by Lehtin and Richter, right up to the minute before the agreement is alleged to have been consummated, that Central States would permit Watson Brothers to occupy the dock and nothing more. With this firm position on the part of Central States, it is too much to believe that the minds of the parties met upon the terms of a lease. More than that, if we accept Wolfe's testimony at its face value, the agreement provided for permitting "Central States Cooperatives also use of the same property." That part of the agreement would indicate some sort of a joint occupancy by the two

1. The conversation between Wolfe and Richter was objected to on the ground that it was not binding upon Central States. It was admitted on the promise of Watson Brothers to connect it up presumably by showing that Richter had authority to act on behalf of Central States.

parties. No such right of joint possession, however, was relied upon by Watson Brothers either in their answer to the complaint, the trial below or here. In other words, the testimony relied upon to show an oral lease calls for use of the property by Central States, but when Watson Brothers comes into court it relies upon an oral agreement which gives it sole and exclusive possession.

More than that, if we assume that an agreement was reached between Wolfe and Richter as to the leasing of the premises, we are of the view that there is a lack of proof as to the latter's authority. The most that the record shows in this respect is a statement by Lehtin, "He is in a position to talk for us." How this authority to talk can be construed as authority to enter into a lease, particularly on the terms which were directly contrary to the express desire and wishes of Central States, is not discernible. In fact, Wolfe's testimony shows that Richter on at least two occasions stated that the proposals made by Wolfe would have to be submitted to Lehtin. Also, Wolfe appears to have recognized that Richter was without authority to make a lease, either oral or written. This is shown from the fact that after the alleged oral agreement was made he requested that it be put in writing and signed by Lehtin. Wolfe testified, "I told him I wanted Mr. Lehtin to sign this thing, that this was the final day, and we had to have a signature from Mr. Lehtin."

Richter promised Wolfe that he would take the matter up with Lehtin. On the following morning (June 8), in a telephone conversation Richter advised Wolfe to call at McBride's office (attorney for Central States), which Wolfe did about noon. There he received from McBride a letter signed by McBride, which contained a proposal by Central States that Watson Brothers could use the dock space (not including the garage and office) as a truck terminal at a certain designated rental. It will be noted that the proposal contained in this letter was similar if not the same as that which Lehtin had made to Wolfe two days previously. The letter contained nothing to indicate that an oral lease had been made the day before; in fact, the proposal is wholly inconsistent with the the terms of the oral lease asserted to have been made the day before between Wolfe and Richter.

Although the letter was open, Wolfe did not take time to read it as he was in a hurry to catch a train for home, and he read it for the first time on the train. On June 17, 1946, Richter addressed a letter to Wolfe, making reference to the proposal which the latter had received from McBride and requesting that he be advised as to whether it was satisfactory and, if not, he desired to negotiate with other prospective tenants. On June 25, 1946, Central States derived title to the premises by warranty deed from Morse and became the owner of the legal title. On the same date, attorneys for Central States sent Watson Brothers a letter by registered mail, withdrawing the offer contained in its letter of June 8, but suggested its willingness to re-enter negotiations for a lease, providing Watson Brothers responded within five days. Again, on July 29, 1946, Central States sent another letter by registered mail to Watson Brothers, terminating all negotiations in relation to a lease and requesting Watson Brothers to vacate the premises on September 30, 1946. Watson Brothers made no response either to the proposal contained in the letter of June 8, or to the letters of June 17, June 25, and July 29.

Watson Brothers relies on the well known rule that it was on a motion for directed verdict entitled to the benefit of all favorable inferences arising from the facts. Assuming it was so entitled, as we think it was, it is our view that the inescapable inferences do its position more harm than good. For instance, if Wolfe at the time he claims to have made an oral lease with Richter thought that the latter was authorized to act for Central States, why did he insist that the agreement be signed by Lehtin? The fact that he was not willing to rely upon Richter in this respect indicates that he recognized Richter's lack of authority. More than that, so far as we can ascertain from the record, Watson Brothers first made its claim of an oral lease when

its answer was filed in court on November 19, 1946. Its silence during all this time is, so we think, inconsistent with its belated contention that it was relying upon an oral lease. When Wolfe on June 8 received from McBride a letter containing Central States' proposal wholly at variance with the alleged oral lease entered into some twenty-four hours previously, it taxes our credulity, in the absence of any protest on his part that he believed an oral agreement binding on the parties had been consummated, and the unfavorable inference arising from that circumstance is enhanced by the failure of Watson Brothers to respond to or acknowledge receipt of the subsequent letters which it received from Central States. A further inference against Watson Brothers arises from the fact that it refused Central States the right to share possession of the premises or to possess any part of the premises, contrary to the alleged oral agreement.

Inasmuch as we are firmly of the view that no oral agreement was made binding upon Central States, we find it unnecessary to proceed further. The judgment appealed from is affirmed.